**UNITED STATES STEEL CORPORA-TION et al., Petitioners,**

v.

**FEDERAL POWER COMMISSION, Respondent,**

**Central Illinois Public Service Co. et al., Intervenors.**

**No. 74–2117.**

United States Court of Appeals, District of Columbia Circuit.

Jan. 10, 1975.

Max O. Truitt, Jr., Washington, D.C., for petitioner.

George W. McHenry, Jr. and William J. Grealis, Federal Power Commission, Washington, D.C., for respondent.

J. Richard Tiano, James K. Mitchell, Washington, D.C., for Mississippi Valley Gas Co., and Arkansas-Missouri Power Co. and others, intervenors.

Francis J. McShalley, Washington, D.C., for Algonquin Gas Transmission Co., intervenor.

Barbara M. Gunther, Cullen and Dykman, Brooklyn, for Brooklyn Union Gas Co., intervenor.

Platt W. Davis, III, Washington, D.C., for Texas Eastern Transmission Corp., intervenor.

Edward J. Grenier, Jr., Asbill & Brennan, Washington, D.C., for General Motors Corp., intervenor.

Before BAZELON, Chief Judge, and McGOWAN, Circuit Judge.

## ORDER

### PER CURIAM.

This matter is before the Court on petitioners' Motion for Temporary Restraining Order and Stay Pending Review, respondent's response thereto, and subsequent relevant pleadings by petitioners, respondent, and intervenors.

On consideration of the foregoing, it is

Ordered by the Court that Petitioners' aforesaid Motion for Temporary Restraining Order and Stay Pending Review is denied for the reasons set forth in the attached memorandum.

The effectiveness of this order is stayed until 5:00 P.M., Monday, January 13, 1975.

## MEMORANDUM

This Court entered its initial stay on December 20, 1974, "solely for the purpose of affording this Court an opportunity to more fully consider the case." That stay was twice extended on December 27, 1974, and January 3, 1975, "for the purpose of affording the Commission the opportunity to act upon petitioners' applications for rehearing and stay of the challenged order during the pendency of the rehearing, and for the further purpose of affording this Court the benefit of the Commission's analysis."

It appears to the Court that the Commission has acted on January 9, 1975, in Opinion No. 716–A, to deny both rehearing and the requested stay. This Court must now reach the extraordinarily difficult task of deciding petitioners' motion for stay pending appeal.

We issued and twice extended our initial stay in hope that additional information which would reach this Court would clarify the issues before us. What has occurred is that the parties have sharpened their arguments and presented them with greater urgency, but have not essentially altered their stance, nor enlarged the facts upon which we must decide.

Under our decision in Virginia Petroleum Jobbers v. F. P. C., 104 U.S.App.D.C. 106, 259 F.2d 921 (1958), we are compelled to assess a balance of harms to the parties and to the public interest if the relief of a stay pending appeal is alternatively granted or denied. In this instance, while it is possible to calculate injury to the petitioners and their employees and families if a stay is denied, from the pleadings before us, injury to the respondent, intervenors and the public interest if the stay is granted cannot be reckoned. The commodity at issue is in very short supply, we are told, and to grant relief to one natural gas consumer is, *ipso facto,* to deny some quantity to someone else. But to reckon injury to all those damaged by a grant of emergency relief, it would be necessary to know all who would be denied gas thereby, their intended gas use, the volumes involved, and the consequences of denial such as layoffs or non-production of a vital product. Since all these pieces of data are required to decide each request for emergency relief, and since in the absence of detailed information our decision would have to be based upon speculation of the rankest sort, chaos would likely result. Consumers concerned with protecting their own diminished supplies would either petition to intervene here, or themselves apply to the Commission for relief from their curtailments.

Our point is not that litigation of this sort would be too burdensome upon the time of this Court. Rather, each of these myriad determinations would require guesswork, based upon scant evidence, and the price of error would be not merely expense to the Court or the parties, but quantities of gas denied to later and competing requests for emergency relief. Only an agency sufficiently aware of the overall state of natural gas supply and demand could *possibly* handle requests for emergency relief *seriatim,* and yet avoid the circumstance where relief grants, each with a *de minimis* impact upon competing consumers, cumulate in outright suffering for all.

This is because it appears to the Court that not all of the injuries required to be considered under *Virginia Petroleum Jobbers, supra,* when a case such as this reaches the posture of a motion for injunction, are considered in the present structure for allocating natural gas. Under Order 467, the focus of allocation is upon "end-use," or where the natural gas is consumed. But in

reckoning irreparable injury under *VPJ, supra,* this Court must consider other things, among them the social desirability of the product made possible by emergency relief, and the social desirability of the fact that a production facility is working at all, with the attendant employment it provides. Categories of consumption under Order 467 reach only the aggregate amount of gas consumed and whether the place of consumption is a residence, commercial establishment, or industrial facility. Thus, a residential home heating unit is given the same category as a residential gas fireplace, or backyard gas-fired kiln. It has been suggested elsewhere by the Commission that it would be inordinately difficult, and even more fraught with injustice, to categorize more finely than does Order 467. After all, home heater and fireplace are on the same customer service pipeline. Be that as it may, we have some evidence before us that very substantial quantities of natural gas are allocated by TETCO, petitioners' supplier, without reference to the category of their "end-use." (See affidavit of Edward Laffey attached to Petitioners' Reply Memorandum). Therefore, all consumers supplied by a single pipeline company will not even have corresponding levels of curtailment among their customers. To the extent that this factor is at work, even the rough divisions according to "end-use" established by Order 467 are being frustrated.

Further complicating the area is the fact that not all natural gas sold and consumed in the United States is regulated by the Federal Power Commission. Only so-called "jurisdictional gas," which moves in interstate commerce is so regulated. The volumes of "non-jurisdictional gas," which apparently are considerable, are regulated by state statutes. Federal regulation is not necessarily superior to state regulation, and our point is only to illustrate that allocation standards under 467 and under state regulation may not mesh or even be compatible.

The present policy favoring industrial curtailments has lead the Commission to condition grants of emergency relief upon a showing of good faith attempt by the customer to reduce overall natural gas consumption by converting to other fuels or processes. This in turn has spawned the dichotomy between conversions that are technically possible (fuel uses or substitutes which can be made under laboratory conditions) and those which are commercially feasible (the manufacturer can afford to remain in business or sell his product at a price which consumers can afford to pay). In deciding whether to grant emergency relief, the Commission must first decide whether all alternative uses or fuels have been deemed unavailable. Parties will assert that the substitutions they are being asked to make may be "possible", but certainly not "feasible". The agency, intent upon paring back overall consumption of this shrinking resource, will be inclined to blur the two concepts, in order to justify the curtailments. Here, too, there are myriad difficulties in determining whether conversions, upon the failure of which emergency relief has or will be denied, are "feasible," or will themselves wreak irreparable injury upon some other interest or potential intervenor. Parenthetically, it nowhere appears on the face of these pleadings that FPC determinations of possible/feasible conversion are squarely bottomed on the kind of local fuel availability data presumably gathered by FEA, or the environmental acceptability views of EPA.

Finally, it appears to the Court that the Commission has weighed and balanced the appropriateness of granting relief upon all the interests under the present regulatory scheme. We cannot hold as a matter of law that upon the merits and the balance of harms petitioners are entitled to a stay pending appeal.