524 F.2d 409
 173 U.S.App.D.C. 248, 12 P.U.R.4th 433
 SOUTHERN CALIFORNIA EDISON COMPANY, Petitioner,
v.
FEDERAL POWER COMMISSION, Respondent,
American Smelting and Refining Co. et al., Arizona Public
Service Company, San Diego Gas & Electric Company, Southern
California Gas Co., Tucson Gas & Electric Co., Nevada
Industrial Customers General Motors Corporation, the People
of the State of California, Southwest Gas Corporation, Salt
River Project Agricultural Improvement District, and
Johns-Manville Products Corporation, Intervenors.
DEPARTMENT OF WATER AND POWER OF the CITY OF LOS ANGELES, Petitioner,
v.
FEDERAL POWER COMMISSION, Respondent,
American Smelting and Refining Company, Compania Minera De
Cananea, S. A. Inspiration Consolidated Copper Company,
Kennecott Copper Corp., Arizona Public Service Company, San
Diego Gas & Electric Company, Southern California Gas
Company, Tucson Gas & Electric Co., Nevada Industrial
Customers, et al., General Motors Corporation, People of the
State of California et al., Southwest Gas Corporation, Salt
River Project Agricultural Improvement and Power District,
and Johns-Manville Products Corporation, Intervenors.
 Nos. 74-1043, 74-1046.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued March 6, 1975.
Decided Dec. 4, 1975.
 
 Arthur T. Devine, Los Angeles, Cal., and Rollin E. Woodbury, Rosemead, Cal., with whom Edward C. Farrell, Los Angeles, Cal., H. Robert Barnes and Alan M. Nedry, Rosemead, Cal., were on the brief for petitioners.
 A. Lee Wallace, Atty., F. P. C., with whom Leo E. Forquer, Gen. Counsel and George W. McHenry, Jr., Sol., and John R. Staffier, Atty., F. P. C., were on the brief for respondent. Richard A. Oliver, Atty., F. P. C., also entered an appearance for respondent.
 
 
 1
 Jerome Ackerman and James R. McCotter, Washington, D. C., were on the brief for intervenors, American Smelting and Refining Co., Compania Minera De Cananea S. A. De C. V. Inspiration Consolidated Copper Co., Kennecott Copper Corp.
 
 
 2
 Sherman Chickering, C. Hayden Ames, Donald J. Richardson, Jr., and David R. Pigott, San Francisco, Cal., were on the brief for intervenor, San Diego Gas & Electric Co.
 
 
 3
 Henry F. Lippitt, II, Los Angeles, Cal., was on the brief for intervenor Nevada Industrial Customers.
 
 
 4
 Edward J. Grenier, Jr., Richard P. Noland, Washington, D. C., Richard J. Pierce, Jr., and Ronald L. Winkler, Washington, D. C., were on the brief for intervenor General Motors Corp.
 
 
 5
 John P. Mathis, Washington, D. C., J. Calvin Simpson and Lawrence Q. Garcia, San Francisco, Cal., were on the brief for intervenors, People of the State of California and the Public Utilities Commission of the State of California.
 
 
 6
 Thomas D. Clarke, Los Angeles, Cal., entered an appearance for intervenor Southern California Gas Co.
 
 
 7
 Thomas F. Brosnan, Washington, D. C., entered an appearance for intervenor Tucson Gas & Electric Co.
 
 
 8
 Leonard L. Snaider, Las Vegas, Nev., entered an appearance for intervenor Southwest Gas Corp.
 
 
 9
 William R. Duff, and Henry E. Brown, Washington, D. C., entered appearances for intervenor, Salt River Project Agricultural Improvement and Power District.
 
 
 10
 George Mabry, Littleton, Colo., entered an appearance for intervenor Johns-Manville Products Corp.
 
 
 11
 Peyton G. Bowman, III and Richard T. Witt, Washington, D. C., entered appearances for intervenor, Arizona Public Service Co.
 
 
 12
 Before BAZELON, Chief Judge, MacKINNON, Circuit Judge and CHRISTENSEN,* Senior District Judge for the District of Utah.
 
 MacKINNON, Circuit Judge:
 
 13
 Petitioners Southern California Edison Company (Edison) and Department of Water and Power of Los Angeles (DWP) appeal the dismissal by the Federal Power Commission (FPC) of their joint petition for extraordinary relief from curtailment of their natural gas deliveries under an interim curtailment plan of the El Paso Natural Gas Company. The Commission ruled that the petitioners' complaint was essentially a matter of "local concern, which should properly be resolved by the Public Utilities Commission of the State of California."[1] We affirm the FPC's dismissal of the petition, in part because we agree that the gravity of the energy shortage which prompts such petitions for extraordinary relief requires users of scarce fuels to exhaust their intrastate remedies before they seek assistance from the FPC. We also note that petitioners' challenges basically go to the fairness of the existing El Paso curtailment plan, which in its permanent version is currently the subject of another appeal in this court designated City of Willcox v. FPC.[2] Since all parties concerned will have an opportunity to test the validity of the permanent plan in that litigation, we decline to afford petitioners the opportunity for a collateral attack at this juncture. For both reasons we conclude that petitioners have not demonstrated circumstances sufficiently urgent to justify a grant of extraordinary relief, and that the Commission's dismissal of their petition was proper.[3]
 
 
 14
 * Edison and DWP are the two primary customers of the Southern California Gas Company (SoCal), a distributor of power which in turn purchases much of its supply from El Paso.[4] Both Edison and DWP are suffering severe gas shortages, in part because of market conditions and in part due to the operation of the El Paso curtailment plan. That plan derives from the Commission's Opinion No. 634, prescribing an interim emergency curtailment plan for the period November 1, 1972, through October 31, 1973, to be extended until the date of a final Commission order. Several parties sought extraordinary relief in the form of exemptions from the El Paso plan, but their petitions were uniformly denied.[5]
 
 
 15
 This court had occasion to consider the operation of the interim plan in American Smelting and Refining Company v. FPC, 161 U.S.App.D.C. 6, 494 F.2d 925 (1974). We concluded that certain aspects of the plan should be remanded to the Commission for its reconsideration prior to promulgation of a permanent plan, but allowed the interim plan to remain in effect pending that ultimate determination. On June 14, 1974, in Opinion No. 697, the FPC prescribed a permanent curtailment plan for El Paso embodying certain modifications required by our American Smelting decision. On December 19, 1974, the Commission issued Opinion No. 697-A to "clarify and modify" its earlier opinion and to provide for operation of the proposed permanent plan pending decision on a limited remanded issue. As noted, numerous petitions for review of those orders have been lodged with this court. Recital of the claims on which the instant petition for extraordinary relief is based indicates that petitioners' challenge goes to the merits of certain aspects of the permanent plan which we considered in the American Smelting decision and which we shall doubtless consider again in City of Willcox v. FPC.
 
 
 16
 Petitioners advance several sources of dissatisfaction with the operation of the plan on their supply of natural gas from SoCal and El Paso. They note their "vigorous protests" over the assignment of boiler fuel to the lowest priority in the El Paso plan. They dispute the Commission's decision to build the plan around historical usage rather than contractual entitlement, arguing that their inability to secure adequate gas supplies during the time which serves as the base period for the plan gives them an unduly low supply of gas under the historical usage standard. They allege discrimination in the operation of the plan, which by their account affords East-of-California (E-O-C) customers using gas for similar purposes a greater percentage of their total requirements, simply because they encountered less difficulty in securing gas supplies during the base period.[6] Petitioners complain of their need, under stringent environmental regulations,[7] to purchase great volumes of costly low-sulfur fuel oil as substitute boiler fuel, and simultaneously assert that they are unable to locate and contract for sufficient fuel oil of requisite quality to compensate for their natural gas curtailment. Finally, they contend that the FPC has an obligation to grant their petition for extraordinary relief, since the Commission itself caused the shortage they suffer by frustrating their attempts to secure alternative sources of gas[8] and by ignoring the de facto curtailment which took place in Southern California before the plan was imposed.
 
 
 17
 Each of these complaints is inextricably bound up with consideration of the merits of the permanent El Paso curtailment plan. One of the issues we remanded to the Commission in American Smelting bears on this proceeding: the relegation of boiler fuel uses to the two lowest priorities in the interim curtailment schedule. Because the Commission advanced "no specific findings or reasoning in support of the . . . decision," 161 U.S.App.D.C. at 25, 494 F.2d at 944, we required a "proper and definitive determination" below to support the Commission's position that "boiler fuel uses of natural gas are per se inferior to all other uses, for purposes of curtailment, regardless of the particular circumstances." Id. at 27, 494 F.2d at 946. In Opinion No. 697, the FPC has reiterated the findings of fact which led to the decision to accord boiler fuel the lowest priority,[9] and those findings will surely be challenged and considered on appeal in City of Willcox.[10] The propriety of the Commission's boiler fuel classification has not been shown to be relevant to consideration of the instant petition for extraordinary relief.
 
 
 18
 In promulgating the permanent El Paso plan in Opinion No. 697, the FPC paid particular attention to the inadequacy in recent years of Southern California natural gas supplies, the central basis for petitioners' request for extraordinary relief. The Commission noted that the decline in California source supplies is a "fact of record," as is the growth of the gross industrial market for natural gas in Southern California.[11] The Commission considered the possibility of "preferential treatment" to rectify the "current imbalance," but found "the evidence necessary to support a preference lacking."[12] The FPC found that there had been no positive showing that the ability of Southern California industrial customers to secure alternative fuels is less than that of E-O-C customers.[13] Its judgment did rest on the specific finding that historical takes and contractual entitlements had been "substantially the same" in California during the relevant time period[14] ; thus the historical usage method of determining a curtailment base volume was no less fair or more discriminatory than the contractual entitlement standard.
 
 
 19
 Opinion No. 697-A, clarifying and modifying Opinion No. 697, was largely concerned with the accuracy and fairness of the base year computation by which curtailed entitlements would be ascertained. The Commission adjusted its base year approach "to reflect recent growth in high-priority loads in the E-O-C market."[15] It explicitly noted the likelihood of claims of discrimination by California customers as the E-O-C service based expanded, but insisted that its seasonal base volume formula represented the fairest method of allocating supplies between Southern California and E-O-C customers.[16] As a safeguard against unanticipated curtailment of "existing requirements of high priority loads," the Commission required El Paso to "construct an end-use profile for the market of each customer, . . . to determine the allocation of El Paso's available gas supply in accordance with the priorities of the permanent curtailment plan."[17]
 
 
 20
 Clearly the permanent curtailment plan, as set forth in Opinion No. 697 and clarified in No. 697-A, has attempted to deal with the precise issues petitioners seek to raise in their petition for extraordinary relief. Petitioners express their willingness to accept arguendo the validity of the interim and permanent plans, but insist that their grievances stem entirely from the way "those plans uniquely affect DWP and Edison due to extraordinary circumstances" set forth in their briefs.[18] We cannot agree that their allegations of unexpected discrimination in the operation of the plan go beyond issues explicitly considered by the Commission when it adopted and promulgated Opinions 697 and 697-A. The Commission noted the potential for discrimination against Southern California customers caused by that state's expanding industrial market and decreasing intrastate gas supplies, but found this risk, which inheres in the historical usage standard, to be tolerable in light of the increasing high priority needs of El Paso's customers. Thus it tacitly rejected the contentions petitioners advance here. We perceive no justification for prematurely passing upon issues almost certain to arise in the scheduled appeal of the permanent plan.
 
 II
 
 21
 The fact that the validity of the permanent El Paso plan will soon be tested on a record more complete than the one before us here does not deprive this court of jurisdiction to grant petitioners the extraordinary relief they seek. The imminence of that litigation is a factor in our determination concerning the urgency of their predicament, but we emphasize that on a compelling showing of need for extraordinary relief we would not delay judgment on their request in the name of judicial efficiency. Our decision to uphold the Commission is largely premised on petitioners' failure to assert that they had fully explored the various avenues by which they might secure alternative fuels without recourse to the FPC.
 
 
 22
 Central to the FPC's ruling was the fact that the Public Utilities Commission of California "did not indicate that it has taken or contemplates any action as a result of the investigation nor is there any indication that Petitioners have sought relief within California."[19] The FPC noted petitioners' allegation that "despite extensive inquiries, they (had) not located substantial uncommitted supplies of domestic low-sulfur fuel oil which would be available for the years 1974 through 1976,"[20] but found this claim to be inadequate evidence that alternative intrastate remedies had been exhausted. A collection of E-O-C interests designated the Nevada Industrial Customers intervened in proceedings before the Commission and in this appeal to suggest the nature and extent of those alternative sources. In particular the Nevada parties argued that petitioners should seek "additional natural gas deliveries from Pacific Gas and Electric Company, additional oil and gas available from sources within the City of Los Angeles itself, and, finally, additional oil and gas from sources in the State and Federal offshore areas outlying the California coast."[21] They pointed out that according to recent Monthly Fuel Availability Reports filed by both DPW and SoCal, substantial purchases of hydroelectric energy and low-sulfur residual fuel oil acquired after petitioners sought assistance from the FPC had greatly eased the fuel shortage in Southern California and perhaps even mooted consideration of the joint petition for extraordinary relief.[22]
 
 
 23
 The Nevada Industrial Customers are not disinterested parties in this controversy; the precise figures they offer concerning the availability of alternative fuels within California cannot be credited without the scrutiny and corroboration afforded by an adversary proceeding. Nevertheless we find it significant that petitioners, who rarely venture into the realm of statistical evidence concerning the dearth of fuel in Southern California, have not contradicted the allegations advanced by the Nevada Industrial Customers. In their Reply Brief they merely reemphasize their claim that they suffer unwarranted discrimination under the El Paso plan.
 
 
 24
 The Nevada Customers' brief repeatedly refers to "emergency" relief, and the entire brief is framed as though an emergency were the sole basis for the subject petition for extraordinary relief. A thorough examination of either the petition or the petitioners' opening brief would reveal that not once does the word "emergency" appear. What counsel for the Nevada Customers apparently fails to comprehend is that DWP and Edison are seeking relief from curtailment provisions which because of the unique situation of DWP and Edison vis-a-vis El Paso, the interstate pipeline, and SoCal, the distributing companym pany unduly discriminate against them in violation of Section 4(b) of the Natural Gas Act.[23]
 
 
 25
 Confronted with specific figures suggesting the availability of alternative fuels, petitioners thus make explicit that their petition is based not on an emergency shortage of energy, but rather on their disagreement with the provisions of the El Paso curtailment plan. They have not examined potential sources of substitute fuels and come away empty-handed they allow that alternatives may be available, but protest the "burdensome differential costs of burning fuel oil in place of the ever-decreasing supplies of natural gas to which they are entitled from the El Paso system."[24]
 
 
 26
 The salient lesson of the current energy shortage and the curtailment litigation it has spawned is that users of scarce fuels such as natural gas must not expect to receive their customary entitlements, but must be prepared to search far and wide for replacement supplies of alternative fuels, possibly of lower quality and probably of greater cost.[25] The Commission has made plain, in this case and in others, that it will require such exhaustive preliminary investigations before it will consider augmenting regular allotments on the basis of petitions for extraordinary relief.[26] The existence of an emergency, threatening either the functional reliability or economic viability of a user of scarce fuels, is not an absolute precondition to a grant of extraordinary relief. The Commission has asserted that interim extraordinary relief in the nature of equitable intervention does require satisfaction of an emergency standard for example, proof that denial of such a grant will result in "severe local economic dislocations and irreparable losses."[27] But the agency has entertained petitions for permanent extraordinary relief on a showing of less exigent circumstances.
 
 
 27
 In particular the FPC requires "a sufficient showing of the specific individualized 'extraordinary circumstances' to support the grant of relief."[28] Generally "loss of revenues or profits is not the type of injury warranting extraordinary relief."[29] And only on a "particularly exemplary showing of compelling public interest" will the Commission grant extraordinary relief "on the basis of end product social utility."[30] Most important for this litigation, the Commission requires that proof of extraordinary circumstances be supplemented with a demonstration that local remedies have been exhausted.A showing of extraordinary need does not automatically entitle a curtailed customer to a grant of relief. The petitioner is also required to show that all available sources of natural gas and alternative fuels have been exhausted, and that due diligence has been exercised in converting gas processes to other fuels.[31]
 
 
 28
 This policy, like the Commission's refusal to engage in the balancing of relative social utilities, is grounded in "basic considerations of administrative convenience,"[32] notably the agency's inability to conduct an independent investigation of alternative sources for every petition for extraordinary relief.
 
 
 29
 We find eminently reasonable the agency's determination to grant extraordinary relief only in the last resort, and approve its refusal to consider such petitions absent a showing "that all other avenues of potential relief have been investigated . . . ."[33] The petitioners in this case clearly fell short of that standard.
 
 III
 
 30
 The Commission's conclusions are not beyond judicial scrutiny. DWP and Edison are parties to the pending appeal on the merits of the El Paso plan, and will have an opportunity to challenge the reasonableness of the FPC's decision that customers in Southern California could properly be curtailed on the basis of possibly unrepresentative historical usage. Failing vindication in that litigation, petitioners have another avenue open to them. In Opinion No. 697 the FPC announced that "El Paso should continue to grant emergency relief by special exemption from curtailment in order to protect electric reliability and to respond to emergency situations (including environmental emergencies) during periods of curtailment where supplemental deliveries are required to forestall irreparable injury to life or property."[34] Upon a sufficient allegation, petitioners might qualify for an emergency exemption under this provision of the curtailment plan. Finally, the possibility remains that they might properly frame a petition for extraordinary relief in terms different from those considered by the Commission in adopting the plan. But we are convinced that the grounds on which they base the petition we consider here do not justify the unusual remedy they seek. Accordingly, the dismissal of the petition by the Commission is
 
 
 31
 Affirmed.
 
 
 32
 BAZELON, Chief Judge (concurring in the result):
 
 
 33
 Unlike the majority, I would reach the question, ". . . whether (the FPC is) empowered to entertain and grant relief on a petition (for extraordinary relief) filed by an intrastate and therefore non-jurisdictional purchaser and distributor of natural gas."[1] I would hold that the Commission has both the authority and the obligation to entertain petitions for extraordinary relief from ultimate consumers.
 
 
 34
 I have no quarrel with the majority's view that the asserted gravity of the energy shortage requires petitioners for extraordinary relief to exhaust all alternative sources of supply, and alternative forms of energy, as well. But I would not distinguish, as the court does,[2] between fuels locally available and those on the national or international market. (See discussion infra.) Nevertheless, I agree with the court that extraordinary relief is not warranted in the instant case. Instead of proving an emergency-like need for additional gas,[3] petitioners sought extraordinary relief in order to collaterally attack the permanent El Paso curtailment plan, which is the subject of another proceeding in this court.[4] Since all interested parties will have the opportunity to test that plan in other litigation, and since we have already accepted operation of the interim curtailment plan despite allegations of the specific flaws here protested,[5] the majority properly declines to examine the validity of the permanent plan herein. Thus, the order of the Commission should be affirmed to the extent that it is based upon petitioners' insufficient showing of entitlement to relief.
 
 
 35
 However, in its denial order of October 25, 1973, the Commission strongly suggested an additional, or alternative, jurisdictional ground for denying extraordinary relief:
 
 
 36
 In a situation analogous to the instant filing, the Commission denied a petition seeking extraordinary relief from the curtailment plan in effect on the system of an interstate pipeline company on the ground of intrusion into a matter of local concern. As in that case, the petitioners DWP and Edison, are not direct customers of the jurisdictional pipeline company, and consequently the relief sought by them are primarily of a local concern, which should properly be resolved by the Public Utilities Commission of the State of California. The Natural Gas Act (Section 1(b)) recognizes the state-federal dichotomy in natural gas regulation and, accordingly, any petition requesting extraordinary relief from a curtailment plan should be filed with this Commission by either the interstate pipeline company or the distributor customer of an interstate pipeline company.[6]
 
 
 37
 In their joint application for FPC rehearing, petitioners Department of Water and Power of the City of Los Angeles (DWP) and Southern California Edison Company (Edison) specifically argued that the Commission had erred in finding that it had no jurisdiction because their sought relief was a matter of local (or state) concern:
 
 
 38
 Although it has not actually so stated, it must be inferred from the Commission's order that it denied jurisdiction to grant the relief sought by Petitioners. The Commission does not lack such jurisdiction. It is totally contradictory to say that the Commission has jurisdiction to establish curtailment plans for interstate pipelines and then take the position that it has no jurisdiction to grant relief from those plans when they subject a person to undue prejudice or disadvantage as prohibited by Section 4(b) of the Natural Gas Act.[7]
 
 
 39
 I agree. This view finds support in case law, as well as logic.
 
 
 40
 Recent decisions of the Supreme Court and this court have established the FPC's authority to approve curtailment plans for interstate pipelines respecting direct sales to industrial customers and sales to distributors for resale. FPC v. Louisiana Power & Light Co., 406 U.S. 621, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972); Michigan Power Co. v. FPC, 161 U.S.App.D.C. 221, 494 F.2d 1140 (1974). However, this broad authority substantially affects federal-state division of regulation. Under FPC Order 467, curtailment is predicated on the end-use of natural gas by all ultimate consumers, including those whose purchases are regulated by state commissions. Thus, the FPC purports to make allocations covering entities not within its regulatory control. While it would leave matters of extraordinary relief as to those customers to state regulators, petitioners point out that state commissions may be very reluctant to grant such relief for fear that such grants might skew gas consumption patterns toward low priorities of end-use, endangering present quantities of interstate gas flowing under the FPC-sanctioned curtailment plan.
 
 
 41
 Jurisdiction cannot be established in the FPC merely by showing, "that the purpose of the (Natural Gas) Act is to protect the ultimate beneficiaries against exploitation by natural gas companies." Mobil Oil Corp. v. FPC, 149 U.S.App.D.C. 310, 317, 463 F.2d 256, 263 (1971), cert. denied, 406 U.S. 976, 92 S.Ct. 2409, 32 L.Ed.2d 676 (1972). Thus, neither desireability of regulation nor an obvious regulatory omission makes for federal jurisdiction. But in Phillips Petroleum Co. v. Wisconsin,[8] the Supreme Court enunciated the view that "the overriding congressional purpose (of the Natural Gas Act) was to plug the 'gap' in regulation . . . resulting from judicial decisions prohibiting . . . state regulation of many of the interstate commerce aspects of the natural-gas business."
 
 
 42
 Similarly, the doctrine of "local concern" under the Act is not itself an absolute bar to federal regulation; while certain activities are exempt from federal control, that exemption applies, "provided that the rates and service of such person and facilities be subject to regulation by the several states."[9] Further, the Supreme Court stated in FPC v. Transcontinental Gas Corp.:[10]when we are presented with an attempt by the federal authority to control a problem that is not, by its very nature, one with which state regulatory commissions can be expected to deal, the conclusion is irresistible that Congress desired regulation by federal authority rather than nonregulation.[11]
 
 
 43
 Additionally, this court held in Conway Corp. v. FPC,[12] that the Commission has the power to consider matters "which would be completely non-jurisdictional taken by themselves, but are appropriate for consideration when germane to the meaningful execution of a jurisdictional function." This reasoning, which presumably justifies looking to consumption by non-jurisdictional customers when allocating scarce supplies, should also compel FPC consideration of the petitions of non-jurisdictional customers for extraordinary relief to alleviate harshness in its broad and approximate allocations.
 
 
 44
 When Order 467 was promulgated, a chief objection was that its end-use based curtailment lacked flexibility, and might yield severe hardships when applied. Commission Order 467-A, entered after rehearing, recognized that " . . . in setting out our statement of policy (in Order 467), we inadvertently omitted procedures to permit the pipeline companies to respond immediately to meet emergency situations that may occur during periods of curtailment."[13] Section 2.78(a) of 18 CFR was amended as follows:
 
 
 45
 The priorities-of-deliveries set forth above will be applied to the deliveries of all jurisdictional pipeline companies during periods of curtailment on each company's system; except, however, that, upon a finding of extraordinary circumstances after hearing initiated by a petition . . . exceptions to those priorities may be permitted.[14]
 
 
 46
 The Order also made plain that full curtailment of all volumes within a priority category must precede any curtailment of the next highest priority category. Further, the Order provides that, "both the direct and indirect customers of the pipeline that use gas for similar purposes" must be "placed in the same category of priority."[15]
 
 
 47
 The Commission now contends that ultimate non-jurisdictional consumers must convince their distributor or its pipeline to champion the consumers' extraordinary relief request before the agency. In taking this position, the FPC ignores the potential conflicts of interest inherent in a market where sellers can readily distribute all available volumes to consumers with high- priority uses, and where the aggrieved consumer may happen to require gas for a lower priority use. The FPC appears to call, as well, for exhaustion of all local remedies before the state public utilities commission. In light of the federal role in curtailment plans, and the frequent need for expedited decision-making in extraordinary relief matters, I think such a requirement is unrealistic and improper. It undermines the very flexibility which Order 467-A was adopted to create, and as petitioners and intervenors[16] note, under mines the principle of end-use curtailment.
 
 
 48
 Further, if authority to grant relief resides solely (or in the first instance) in the state commissions, and if those commissions were to grant relief by applying intrastate gas supplies to lessen hardships imposed by operation of interstate gas curtailments (as the Commission and the majority suggest), the federal-state regulatory dichotomy would be severely compromised. The intrusion worked by recognizing federal jurisdiction to alleviate suffering caused by federally-sanctioned interstate curtailments is minor by comparison. We recently noted that, "Only an agency sufficiently aware of the overall state of natural gas supply and demand could possibly handle requests for emergency relief seriatim, and yet avoid the circumstance where relief grants, each with a de minimis impact upon competing consumers, cumulate in outright suffering for all." United States Steel Corp. v. FPC, 166 U.S.App.D.C. 309, 310, 510 F.2d 689, 690 (1975). Clearly, if Order 467 is to operate as a general policy with nationwide effect, all exceptions and variances to interstate curtailments must be reviewed by one agency informed about national needs and priorities, rather than by fifty-one local ones adopting potentially inconsistent standards for relief.
 
 
 49
 At oral argument, the Commission cited its own order in another docket[17] wherein it denied ultimate consumers the right to petition for extraordinary relief for the following reasons: (1) It would be unclear how rates covering relief gas would be set. (2) As the FPC has no direct control over intrastate transactions between distributors and ultimate consumers, there could be no enforcement to ensure that additional gas ordered from pipeline to distributor earmarked for a suffering ultimate consumer would actually reach him. (3) Such a grant might constitute undue discrimination to other customers.
 
 
 50
 I would respond as follows: (1) Relief gas can be sold under the same state-regulated terms as apply to non-relief volumes. All that the FPC would determine is whether the granting of relief is justified.[18] (2) Grants of relief gas to the distributor and earmarked for the ultimate consumer could be conditioned upon receipt by the needy party, with appropriate penalties for non-compliance. Further, if the views of the State of California and the California PUC are typical,[19] the FPC might receive more enthusiastic enforcement support from state regulators than it has heretofore anticipated. (3) I fail to see how granting extraordinary relief on behalf of an ultimate consumer is any more discriminatory to competing gas customers than the FPC's fantasy of having distributors/pipelines petition on behalf of their purchasers.
 
 
 51
 Although the unprecedented shortages asserted for curtailment by interstate pipeline companies were not contemplated by the Natural Gas Act, the FPC and the courts have construed the Act to meet emergencies. If curtailment of interstate volumes based upon end-use of ultimate consumers has created hardship for some consumers it is due to nationwide shortages and national allocation policy, matters beyond the competence and jurisdiction of state regulatory commissions.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 294(d)
 
 
 [1]
 El Paso Natural Gas Company, 50 F.P.C. 1239, 1240 (1973)
 
 
 [2]
 City of Willcox and Arizona Electric Cooperative, Inc. v. FPC, No. 74 2123, and consolidated cases (D.C.Cir., appeal filed Dec. 23, 1974). In these consolidated cases, some of which were transferred to this court by the Ninth Circuit pursuant to an order of February 27, 1975, we are asked to review the FPC's Opinion No. 697 (Docket No. 72-6, issued June 14, 1974) and Opinion No. 697-A (Docket No. 72-6, issued December 19, 1974), prescribing a permanent curtailment plan for the El Paso system to replace an interim plan in effect since October 21, 1972. In addition to the parties named in the caption, parties to this case include intervenors Navajo Tribal Utility Authority, the Department of Water and Power of Los Angeles, The People of the State of California, Tucson Gas & Electric Company, Pacific Gas and Electric Company, Southern California Edison Company, Nevada Power Company, Southwest Gas Corporation, Southwest Natural Gas Consumers, Arizona Fuel Users Association, San Diego Gas & Electric Company, American Smelting and Refining Company, Southern Union Gas Company, General Motors Corporation, El Paso Natural Gas Company, and Pioneer Natural Gas Company
 
 
 [3]
 Since we conclude that extraordinary relief is inappropriate in this case because of petitioners' failure to allege exigent circumstances and exhaustion of local remedies and because of the similarity of their claims here and the challenges to the permanent plan which the FPC considered in Opinions 697 and 697-A, we do not reach another question presented by the Commission's dismissal of the petition, i. e., whether it is empowered to entertain and grant relief on a petition filed by an intrastate and therefore nonjurisdictional purchaser and distributor of natural gas
 
 
 [4]
 Specifically, SoCal supplies DWP and Edison with the preponderance of their gas fuel requirements, Brief for Petitioners at 7; that gas is furnished at the lowest priority under the El Paso scheme. SoCal supplies DWP and Edison on an interruptible basis, but they in turn sell power to their customers on firm contracts. Id. at 5-7
 
 
 [5]
 In Opinion No. 697 at pages 27-29, the FPC disposes of the Applications for Extraordinary Relief of the City of Willcox, Arizona, Arizona Electric Cooperative, and the City of Mesa, Arizona
 
 
 [6]
 In particular, petitioners claim that because they receive a smaller percentage of their requirements than E-O-C customers, the plan contravenes § 4(b) of the Natural Gas Act, 15 U.S.C. §§ 717-717w (1963), which provides in part:
 (b) No natural-gas company shall, with respect to any transportation or sale of natural gas subject to the jurisdiction of the Commission, (1) make or grant any undue preference or advantage to any person or subject any person to any undue prejudice or disadvantage, or (2) maintain any unreasonable difference in rates, charges, service, facilities, or in any other respect, either as between localities or as between classes of service.
 15 U.S.C. § 717c(b).
 
 
 [7]
 The joint petition states that applicable air pollution regulations require that all oil burned in electric generation facilities must contain no more than 0.5 percent sulfur. Petitioners state that such low sulfur oil is in extremely short supply
 
 
 [50]
 FPC 1239
 
 
 [8]
 As part of an undertaking known as the Gulf Pacific Project, Edison and DWP attempted to secure an independent, assured supply of gas in the volume of 6.4 trillion cubic feet of proven reserves over 20 years, principally from the Katy Field in Texas. The Presiding Examiner recommended authorization of appellants' proposal, but in July 1966, in Opinion No. 500, Re Transwestern Pipeline Co., the Commission rejected his recommendation and allowed the gas to be devoted principally to the Texas intrastate market. See 36 F.P.C. 176 (1966)
 
 
 [9]
 FPC Opinion No. 697 at 14-15
 
 
 [10]
 See note 2 supra
 
 
 [11]
 FPC Opinion No. 697 at 19
 
 
 [12]
 Id
 
 
 [13]
 Id
 
 
 [14]
 Id. at 20
 
 
 [15]
 FPC Opinion No. 697-A at 3-4
 
 
 [16]
 Id. at 4-5
 
 
 [17]
 Id. at 7
 
 
 [18]
 Reply Brief for Petitioners at 20
 
 
 [19]
 50 F.P.C. at 1240
 
 
 [20]
 Id. at 1239
 
 
 [21]
 Brief for Nevada Industrial Customers at 2
 
 
 [22]
 Id. at 7-11
 
 
 [23]
 Reply Brief for Petitioners at 21
 
 
 [24]
 Id. at 22
 
 
 [25]
 A press release issued by the Federal Energy Administration on July 1, 1975, illustrates the scope and importance of the search for alternative fuels. Pursuant to authority conferred by section 2 of the Energy Supply and Environmental Coordination Act of 1974, 15 U.S.C.A. § 791 et seq. (1975 Supp.), FEA has issued proposed "conversion orders" to 32 generating stations supplied by 74 power plants. Each of these installations currently burns "natural gas or petroleum products as its primary energy source," 15 U.S.C.A. § 792(a)(2); following a finding by the Environmental Protection Agency that these plants can burn coal without violating applicable environmental standards, each will be required to acquire an adequate supply of coal and to burn that fuel exclusively in its future power generation. Twelve of the 32 generating stations covered by the FEA's action are in the Mid-West (Region 7); eight fall within the Mid-Atlantic area (Region 3); no stations in the regions designated West, Far West and Pacific Northwest (Regions 8-10) have been affected
 
 
 [26]
 See, e. g., Texas Eastern Transmission Corporation, --- F.P.C. --- (Docket No. RP74-39-8, issued February 26, 1975); Panhandle Eastern Pipe Line Company, 50 F.P.C. 961 (Docket No. RP71-119, issued September 28, 1973)
 
 
 [27]
 Northwest Pipeline Corporation, --- F.P.C. --- (Docket No. RP75-31-1, issued December 23, 1974), at 3
 
 
 [28]
 Texas Eastern Transmission Corporation, supra note 26, at 2
 
 
 [29]
 Monsanto Co. v. FPC, 149 U.S.App.D.C. 396, 402, 463 F.2d 799, 805 (1972), citing United Gas Pipeline Co., 47 F.P.C. 196, 197 (Docket Nos. RP71-29, RP71-120, issued January 28, 1972)
 
 
 [30]
 Texas Eastern Transmission Corporation, supra note 26, at 8
 
 
 [31]
 Id. at 8-9 (citations omitted)
 
 
 [32]
 Id. at 8
 
 
 [33]
 Brief for FPC at 23
 
 
 [34]
 FPC Opinion No. 697 at 21
 
 
 [1]
 --- U.S.App.D.C. at p. ---, 524 F.2d at p. 411, n. 3
 
 
 [2]
 --- U.S.App.D.C. at p. ---, 524 F.2d at p. 410: ". . . we agree that the gravity of the energy shortage . . . requires users of scarce fuels to exhaust their intrastate remedies before they seek assistance from the FPC." (emphasis added). In my view, existence of any untapped alternative sources of gas casts doubt upon a petition for extraordinary relief. Where, as here, there is allegation of hardship attributable to curtailment of interstate supplies, I would not require formal attempts to obtain state commission reallocation of intrastate supplies as a prerequisite to seeking FPC assistance. I would require exhaustion of alternatives in the marketplace
 
 
 [3]
 --- U.S.App.D.C. --- nn. 25-33, 524 F.2d 415 nn. 25-33, and text adjacent thereto. I note that the Commission statement in TETCO, relied upon by the majority to require a demonstration of exhaustion of local remedies, in fact requires proof that, ". . . all available sources of natural gas and alternative fuels have been exhausted . . ." without reference to locality
 
 
 [4]
 City of Wilcox and Arizona Electric Power Cooperatives, Inc., et al. v. FPC, (D.C.Cir. No. 74-2132)
 
 
 [5]
 American Smelting and Refining Co. et al. v. FPC, 161 U.S.App.D.C. 6, 30, 494 F.2d 925, 949 (1974)
 
 
 [6]
 J.A. 106. Pertinent portions of the Natural Gas Act are set forth below:
 § 717. Necessity for regulation of natural gas companies.
 (a) As disclosed in reports of the Federal Trade Commission made pursuant to S.Res. 83 (Seventieth Congress, first session) and other reports made pursuant to the authority of Congress, it is declared that the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, and that Federal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce is necessary in the public interest.
 (b) The provisions of this chapter shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use, and to natural-gas companies engaged in such transportation or sale, but shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas.
 (c) The provisions of this chapter shall not apply to any person engaged in or legally authorized to engage in the transportation in interstate commerce or the sale in interstate commerce for resale, of natural gas received by such person from another person within or at the boundary of a State if all the natural gas so received is ultimately consumed within such State, or to any facilities used by such person for such transportation or sale, provided that the rates and service of such person and facilities be subject to regulation by a State commission. The matters exempted from the provisions of this chapter by this subsection are declared to be matters primarily of local concern and subject to regulation by the several States. A certification from such State commission to the Federal Power Commission that such State commission has regulatory jurisdiction over rates and service of such person and facilities and is exercising such jurisdiction shall constitute conclusive evidence of such regulatory power or jurisdiction. (June 21, 1938, ch. 556, § 1, 52 Stat. 821; Mar. 27, 1954, ch. 115, 68 Stat. 36.)
 
 
 [7]
 J.A. 110
 
 
 [8]
 347 U.S. 672, 682-83, 74 S.Ct. 794, 799, 98 L.Ed. 1035 (1954)
 
 
 [9]
 Natural Gas Act, § 1(c), 52 Stat. 821, as amended 68 Stat. 36, 15 U.S.C. § 717(c). For full text of subsection see note 6, supra
 
 
 [10]
 365 U.S. 1, 81 S.Ct. 435, 5 L.Ed.2d 377 (1961)
 
 
 [11]
 Id. at 28, 81 S.Ct. at 450
 
 
 [12]
 167 U.S.App.D.C. ---, 510 F.2d 1264, 1272 (1975), cert. granted, 44 U.S.L.W. 3279 (U.S. Nov. 11, 1975)
 
 
 [13]
 49 FPC 217, 218
 
 
 [14]
 18 CFR § 2.78(a)(11) (1974), recodified as 18 CFR § 278(a)(2) (1975)
 
 
 [15]
 49 FPC 217, 219
 
 
 [16]
 Intervenor San Diego Gas & Electric Company notes that the FPC had held the door open to petitions for extraordinary relief by all aggrieved parties to the El Paso proceedings in Opinion No. 634-A, one of the FPC actions establishing the interim El Paso curtailment plan: "We realize that there may be situations where alternate fuel facilities exist but for good reason the capability does not exist. As noted in other curtailment cases, any party who finds itself in a position such as this and can clearly show the Commission that such a situation exists is free to ask for extraordinary relief at any time." Opinion No. 634-A at 3. San Diego specifically took no position on the merits of DWP and Edison's claims, asking only that the court find that ultimate consumers may petition for extraordinary relief before the FPC. Intervenor General Motors asked the court to reject any arguments that the Commission is powerless to assure enforcement of an extraordinary relief grant, but deemed reasonable a requirement that all local commission remedies must first be exhausted. Intervenors the State of California and the California Public Utilities Commission state forcefully their view that, "the curtailment problem in this case does not lend itself to a solution solely at a local level and cannot be characterized as being one of strictly local concern." Br. at 5. California states that 80% of the gas consumed in-state is subject to FPC jurisdiction, and that it is "delusion to believe that (its) State Commission has sole or practical control over allocations of interstate gas supply . . . " Id. at 6. California suggests that the appropriate treatment of a petition for extraordinary relief would be FPC denial or grant buttressed by whatever local commission actions are necessary to effectuate the FPC order. In their reply brief, California and California PUC contend that the state commission's jurisdiction over intrastate natural gas and oil is far less extensive than the FPC suggests, and raise serious doubts that emergency relief could be granted to ultimate consumers by the state
 
 
 [17]
 Panhandle Eastern Pipe Line Company, Docket No. RP71-119, issued September 28, 1973, 50 FPC 961, 963-64, appearing as appendix B, FPC Brief
 
 
 [18]
 In this way, all petitions for emergency relief would be centrally handled, and could be decided upon the basis of their comparative merits and urgency
 
 
 [19]
 Br. at 7-9