CITY OF HUNTINGBURG, INDIANA, Petitioner,

v.

FEDERAL POWER COMMISSION, Respondent,

Michigan Gas Utilities Co., Associated Natural Gas Co., Michigan Wisconsin Pipe Line Co., Wisconsin Public Service Corp., Wisconsin Gas Company, North Central Public Service Co., etc., Wisconsin Michigan Power Co. and Wisconsin Natural Gas Company, Intervenors.

No. 75–2152.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 3, 1976.

Decided April 26, 1977.

---

**78.** *Id.* at 197, 485 F.2d at 976.

Charles F. Wheatley, Jr., Washington, D. C., with whom William T. Miller and Stanley W. Balis, Washington, D. C., were on the brief for petitioners.

John J. Lahey, Atty., F. P. C., Washington, D. C., with whom Drexel D. Journey, Gen. Counsel, Robert W. Perdue, Deputy Gen. Counsel and Allan Abbot Tuttle, Sol., F. P. C., Washington, D. C., were on the brief for respondent.

Richard J. Flynn, Washington, D. C., with whom Frederick G. Berner, Jr., and Charles V. Shannon, Washington, D. C., were on the brief, for intervenor, Michigan Wisconsin Pipe Line Co.

Robert A. Nuernberg, Appleton, Wis., for intervenor, Wisconsin Gas Co.

Robert H. Gorske and Robert H. Diaz, Jr., Milwaukee, Wis., for intervenors, Wisconsin Michigan Power Co. and Wisconsin Natural Gas Co.

Richard T. Witt, Washington, D. C., entered appearances for intervenor, Michigan Gas Utilities Co.

J. Richard Tiano, Washington, D. C., entered appearances for intervenor Associated Natural Gas Co.

Seymour Tabin, Chicago, Ill., entered an appearance, for intervenor, Wisconsin Public Service Corp.

Ned Willis, Perry, Iowa, entered an appearance for intervenor, North Central Public Service Co.

Richard M. Merriman, Wasington, D. C., for intervenors, Michigan Gas Utilities Co. and Associated Natural Gas Co.

Before BAZELON, Chief Judge, and LEVENTHAL and MacKINNON, Circuit Judges.

Opinion Per Curiam.

PER CURIAM:

The facts of this case are fully set out in the Federal Power Commission's Order Denying Application for Interconnection and Service, Docket No. CP73–164, issued August 6, 1975, 54 FPC ——, and its Order Denying Rehearing, issued September 30, 1975, 54 FPC ——. We summarize them very briefly below.

In 1972, the Michigan Wisconsin Pipe Line (Mich-Wis) applied to the Federal Power Commission for a certificate of public convenience and necessity to expand its system facilities to accommodate 75,000 additional Mcf per day. The increased gas supply derived from newly committed offshore reserves. Late that year, the City of Huntingburg, Indiana, itself not a Mich-Wis customer, intervened in the FPC docket and simultaneously applied under Section 7(a) of the Natural Gas Act, 15 U.S.C. § 717f(a), for an interconnection with the pipeline and an allocation of its "expansion" gas.

Huntingburg was a customer of the curtailed Texas Eastern Transmission Company pipeline (TETCO) claiming to need those allocations to cover prior-committed volumes. The facilities to be served included a

brickyard, two schools, and a food processing plant. The sought interconnection was in lieu of seeking extraordinary relief from the TETCO curtailment scheme. Mich-Wis opposed the interconnection and allocation on the ground that it faced many similar requests from other persons whose normal pipeline supplier was in curtailment, and had inadequate system supply to meet its customers' needs and those of new applicants like Huntingburg. Twenty-six Mich-Wis customers and the Commission staff likewise opposed Huntingburg's request. The Administrative Law Judge initially decided that Huntingburg failed to sustain its burden of demonstrating that interconnection was necessary or desirable in the public interest, and would not have adverse effects upon existing Mich-Wis customers. See *Granite City Steel Co. v. FPC*, 115 U.S.App.D.C. 392, 320 F.2d 711 (1963). Further, evidence revealed that the Huntingburg customers to benefit from the interconnection were low priority industrial users, since the higher priority uses served by Huntingburg could all be covered by even the curtailed volumes delivered by TETCO. The ALJ judged that in an era of extreme shortage, the uses to which Mich-Wis would apply its "expansion" gas were no less worthy of supply than those to which Huntingburg sought to divert the gas. The Commission affirmed the ALJ on August 6, 1975, and denied rehearing late in September.

■ It seems clear that Huntingburg was using the vehicle of a public convenience and necessity application to overcome problems directly attributable to curtailment by another pipeline supplier. Rather than deny the certificate outright on this procedural ground, the Commission appears to have considered it for what it was, and applied an extraordinary relief standard. As we expressed in *United States Steel Corp. v. FPC*, 510 F.2d 689, 690 (1975), this court is very reluctant to insert itself into the delicate judgments of the Commission with respect to relief from curtailments:

Only an agency sufficiently aware of the overall state of natural gas supply and demand could *possibly* handle requests for emergency relief *seriatim*, and yet avoid the circumstance where relief grants, each with a *de minimis* impact upon competing consumers, cumulate in outright suffering for all.

Viewed as a decision rightly employing an extraordinary relief standard, the court finds no basis for reversal in this case; the decision not to add new customers to the Mich-Wis load, but rather to use any "expansion" gas to soften curtailments impacts to existing customers (directly or by storage injection) is not arbitrary or capricious, but rational and grounded in the record evidence that Huntingburg's uses were at least no higher than those served by denying interconnection. Nor can we find any Commission violation of its own regulations or standards or policies.

We do not consider lightly the argument that Huntingburg's application is not an isolated emergency request. As our language in *U. S. Steel, supra,* suggests, attempts to soften the impact of curtailment are frequently multiple; here, Mich-Wis has already received many other requests for new supplies from the customers of other pipelines.

Finally, we note that Huntingburg has had some success in pursuing the orthodox route for redressing shortfalls due to curtailment. On February 1, 1977, the Commission granted the City of Huntingburg's belated (May 21, 1975) petition for emergency relief.

*Affirmed.*