**MICHIGAN POWER COMPANY,**
Petitioner,

v.

**FEDERAL POWER COMMISSION, Respondent, Municipal Defense Group, Northern Natural Gas Company, Intervenors.**

**No. 71–1752.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 20, 1972.

Decided March 25, 1974.

Rehearing Denied May 3, 1974.

Leventhal, Circuit Judge, did not participate in the disposition.

Reuben Goldberg, Washington, D.C., with whom Lee J. Steffen, Jr., Washington, D.C., was on the brief, for petitioner.

George W. McHenry, Jr., First Asst. Sol., F. P. C., with whom Gordon Gooch, Gen. Counsel, Leo E. Forquer, Sol., and J. Richard Tiano, Deputy Sol., F. P. C., at the time the brief was filed, were on the brief, for respondent.

George J. Meiburger, Washington, D. C., with whom Walter E. Gallagher, Washington, D.C., and F. Vison Roach, Omaha, Neb., were on the brief for intervenor, Northern Natural Gas Co.

Charles F. Wheatley, Jr., William T. Miller, and Jerome C. Muys, Washington, D.C., were on the brief for intervenor, Municipal Defense Group.

Before LEVENTHAL, ROBINSON and ROBB, Circuit Judges.

PER CURIAM:

Petitioner, Michigan Power Company, operates a natural gas distribution system in the Upper Peninsula of Michigan and purchases all its natural gas from Intervenor, Northern Natural Gas Company (Northern). Although this appeal challenges orders entered in Docket No. RP71–107 which allowed Northern to file revisions of its gas tariff (tariff), the genesis of the dispute was in Docket No. RP71–89.

In January 1971 Northern, pursuant to section 4 of the Natural Gas Act (Act), 15 U.S.C. § 717c (1970), filed in Docket No. RP71–89 a proposal to amend the curtailment provisions of its tariff. Under this tariff Michigan Power had the right to purchase a contract demand of 25,188 Mcf of natural gas per day subject to only two curtailment provisions. The first curtailment provision gave Northern the right to reduce deliveries of gas below Michigan Power's contract demand during the months of April through October, but only to the extent necessary to perform specified maintenance and construction work and only after Northern had first discontinued deliveries of gas to its direct interruptible customers. *Northern Natural Gas Company, FPC Gas Tariff, Third Revised Volume No. 1, Original Sheet No. 59, General Terms and Conditions, Section 9.1.* The second curtailment provision gave Northern the right to require Michigan Power to reduce or discontinue its purchases of gas for resale to large volume commercial and industrial customers whenever, because of conditions beyond the control of Northern, the volume of gas available for delivery by Northern, after discontinuance of deliveries to Northern's direct interruptible customers, was not adequate to supply all contract demand requirements of all wholesale purchasers. *Northern Natural Gas Company, FPC Gas Tariff, Third Revised Volume No. 1, Original Sheet No. 59, General Terms and Conditions, Section 9.2.* Northern's proposed revisions affected both section 9.1 and section 9.2 of the tariff.

The proposed revisions removed the contract provision limiting Northern's right to reduce gas deliveries to situations where the gas supply was inadequate to fulfill all wholesale customer contract demand requirements. In place of this limitation Northern sought the right to reduce gas deliveries up to fifteen percent of the customer's contract demand on any day during the months of April and October, and up to thirty percent on any day during the months of May through September. The effect of this new curtailment right would have been to allow Northern to replenish its underground storage tanks without having first to discontinue deliveries to its own direct interruptible customers. The proposed revisions also restricted the use and resale rights of Northern's

wholesale customers by prohibiting the use of purchased gas in the customer's own electric generating plants and the resale of the gas to consumers whose requirements were in excess of 25,000 Mcf per day.

Michigan Power filed a motion to reject Northern's filing on the grounds that (1) the proposed curtailment revisions were an illegal unilateral change in Northern's contract, with Michigan Power and (2) the proposed revisions constituted an abandonment of service which required a proceeding under section 7 of the Act, 15 U.S.C. § 717f (1970), rather than section 4, 15 U.S.C. § 717c (1970).

On February 26, 1971 the Commission issued an order in Docket No. RP71–89 denying Michigan Power's motion to reject on the ground that the Supreme Court in United Gas Pipe Line Co. v. Memphis Light, Gas & Water Div., 358 U.S. 103, 79 S.Ct. 194, 3 L.Ed.2d 153 (1958), rehearing denied, 358 U.S. 942, 79 S.Ct. 344, 3 L.Ed.2d 350 (1959), had sustained unilateral changes in contracts where the right to make such changes had not been bargained away by the natural gas pipeline company. The Commission deferred consideration of the applicability of section 7 abandonment proceedings and suspended the effectiveness of the filed tariff revisions until April 27, 1971.

Michigan Power filed a motion for reconsideration of the February 26 order in Docket No. RP71–89. On March 19, 1971 the Commission issued an order granting partial reconsideration of its February 26 order. The Commission (1) extended the suspension period, and (2) held that formal abandonment proceedings under section 7 of the Act were not required. With respect to the abandonment issue the Commission found "that the proposal of Northern [was] a change in service which [was] a permissible filing under Section 4 of the Act." *Order Granting Partial Reconsideration, Amending Suspension Period, Denying Stay, and Determining Abandonment Issue* (March 19, 1971).

In light of the Commission's decision to extend the suspension period, on March 22, 1971, Northern filed a notice of withdrawal of its filing in Docket No. RP71–89. On April 19, 1971 the Commission allowed Northern's withdrawal.

The proceedings which are the basis for this appeal began when Northern, on April 26, 1971, filed for a general rate increase, under section 4 of the Act, in Docket No. RP71–107. As part of its filing Northern proposed the same revisions of its curtailment rights as it had proposed in Docket No. RP71–89. Michigan Power intervened in Docket No. RP71–107 and objected to the curtailment plans on the same grounds it had argued in Docket No. RP71–89. On May 26, 1971 the Commission denied Michigan Power's motion to reject. The denial was based upon the rationale stated in the Commission's February 26, 1971 and March 19, 1971 orders in Docket No. RP71–89. Michigan Power filed an application for rehearing of the May 26 order, which the Commission denied on July 23, 1971. Michigan Power seeks review of the Commission's May 26 and July 23 orders in Docket No. RP71–107. For reasons stated below we affirm.

I.

At the outset the Commission says the challenged orders are interlocutory and not subject to our scrutiny until after the Commission's hearing on the reasonableness of Northern's proposals.

■■ Although procedural orders of the Commission are not normally reviewable, FPC v. Metropolitan Edison Co., 304 U.S. 375, 383–384, 58 S.Ct. 963, 82 L.Ed. 1408 (1938); Texas Gas Corp. v. FPC, 102 U.S.App.D.C. 59, 250 F.2d 27 (1957), it is our duty to review orders which have an immediate impact on petitioner's rights and are of such a nature as to result in irreparable harm. Amerada Petroleum Corp. v. FPC, 285 F.2d 737, 739 (10th Cir. 1960); Isbrandtsen v. United States, 93 U.S.App. D.C. 293, 211 F.2d 51, cert. denied, 347 U.S. 990, 74 S.Ct. 852, 98 L.Ed. 1124 (1954); Abbott Laboratories v. Gard-

ner, 387 U.S. 136, 87 S.Ct. 1507, 18 L. Ed.2d 681 (1967). We think the Commission's determination that Northern could properly file its unilateral curtailment revisions under section 4(e) of the Act,[1] rather than under section 7(b)[2] was a final determination of substantive character which could result in irreparable injury. Atlanta Gas Light Co. v. FPC, 476 F.2d 142, 147–148 (5th Cir. 1973). After the suspension period provided in section 4, the order permitted Northern to withhold volumes of gas which otherwise it would have been obliged to deliver. The impact on Michigan Power could be immediate, and the injury caused could not be rectified by subsequent Commission action. In a proceeding under section 7, on the other hand, the revised curtailment plan could not have gone into effect before the Commission held a hearing and made its findings of fact.

## II.

On April 15, 1971 the Commission issued Order No. 431, promulgating a statement of general policy. 36 Fed. Reg. 7505 (1971). Order No. 431 stated in part:

(a) This Commission, charged with the responsibility for natural gas reliability, hereby promulgates as a statement of general policy that jurisdictional pipeline companies shall take all steps necessary for the protection of as reliable and adequate service as present supplies and capacities will permit during the 1971–72 heating season and thereafter, including adequate injection into storage in anticipation of the heating season.

(b) In order to effectuate the foregoing:

(1) During the storage injection season all natural gas pipelines subject to the jurisdiction of the Commission should make every reasonable effort to fill all storage fields supplied by such pipelines to a capacity sufficient to meet the anticipated heating season demands.

(2)(i) All jurisdictional pipelines will within 30 days hereof, submit a written report (four copies) to the Secretary of the Commission indicating how the instant statement of policy will be implemented. Pipelines responding that curtailment will be necessary will file a tariff sheet, pursuant to sections 4 and 5 of the Natural Gas Act and the Commission's regulations thereunder, setting forth a

---

1. (e) Whenever any such new schedule is filed the Commission shall have authority, either upon complaint of any State, municipality, State commission, or gas distributing company, or upon its own initiative without complaint, at once, and if it so orders, without answer or formal pleading by the natural-gas company, but upon reasonable notice, to enter upon a hearing concerning the lawfulness of such rate, charge, classification, or service; and, pending such hearing and the decision thereon, the Commission, upon filing with such schedules and delivering to the natural-gas company affected thereby a statement in writing of its reasons for such suspension, may suspend the operation of such schedule and defer the use of such rate, charge, classification, or service, but not for a longer period than five months beyond the time when it would otherwise go into effect, and after full hearings, either completed before or after the rate, charge, classification, or service goes into effect, the Commission may make such orders with reference thereto as would be proper in a proceeding initiated after it had become effective. If the proceeding has not been concluded and an order made at the expiration of the suspension period, on motion of the natural-gas company making the filing, the proposed change of rate, charge, classification, or service shall go into effect. . . .
15 U.S.C. § 717c(e) (1970).

2. (b) No natural-gas company shall abandon all or any portion of its facilities subject to the jurisdiction of the Commission, or any service rendered by means of such facilities, without the permission and approval of the Commission first had and obtained, after due hearing, and a finding by the Commission that the available supply of natural gas is depleted to the extent that the continuance of service is unwarranted, or that the present or future public convenience or necessity permit such abandonment.
15 U.S.C. § 717f(b) (1970).

curtailment plan to effectuate the instant policy or state that the curtailment program, if any, currently on file will effectuate this policy. The curtailment plan proposed may be divided between the injection season and the heating season, since different objectives may require different treatment.

\*　　\*　　\*　　\*　　\*　　\*

(7) Jurisdictional pipelines have the responsibility in the first instance to adopt a curtailment program by filing appropriate tariffs. Such tariffs, if approved by the Commission, will control in all respects notwithstanding inconsistent provisions in sales contracts, jurisdictional and nonjurisdictional, entered into prior to the date of the approval of the tariff.

Responding to Order No. 431, Northern informed the Commission, in part, that

it will be necessary, to some extent, to effectuate limited curtailment of certain large volume interruptible loads below contract demand to assure the availability of sufficient pipeline capacity and volumes of gas to replenish the Redfield Underground Storage Field.

Continuing its response, Northern stated:

Northern will implement the above-described method of replenishing Northern's storage facility during the injection season of 1971 only. In its filing at Docket No. RP71–107, made pursuant to Section 4 of the Natural Gas Act, Northern proposes, among other things, a revision to Section 9 of the General Terms and Conditions of its tariff in order to accomplish curtailment below contract demand for the future.

Letter from Gordon Severa to Federal Power Commission, Attention, Acting Secretary Kenneth Plumb, May 14, 1971.

In FPC v. Louisiana Power & Light Co., 406 U.S. 621, 92 S.Ct. 1827, 32 L. Ed.2d 369 (1972), the Supreme Court considered the validity and scope of Order No. 431. The Court's decision established that (1) the FPC may deal with curtailment plans in proceedings under section 4 of the Act; (2) permitting a pipeline's curtailment plan to take effect despite contrary terms in existing contracts is not inconsistent with the decision in United Gas Pipe Line Co. v. Mobile Gas Service Corp., 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956); and (3) a curtailment plan does not of itself constitute an abandonment of service within the meaning of section 7(b). In conclusion the Court said that the Natural Gas Act fully authorizes the method chosen by the FPC for the exercise of its jurisdiction in Order No. 431. (406 U.S. at 647, 76 S.Ct. at 373).

We think the decision in FPC v. Louisiana Power & Light Co. controls in this case. The petitioner attempts to distinguish the *Louisiana Power & Light Co.* case upon the ground that the curtailment plan here proposed was in fact an abandonment. We are not persuaded by this argument; on the contrary, we agree with the Commission that Northern does not seek permission to stop selling gas to any of its customers on a permanent basis. Northern alleges only that its gas supply and pipeline capacity are inadequate to permit it both to supply full contract demands to its customers during the summer and to refill its storage reservoir so that it will be able to meet the customers' requirements during the winter.

Finally, the petitioner argues that the curtailment plan submitted by Northern in RP71–107 is not responsive to Order No. 431. We reject this argument since Northern's response to Order No. 431 specifically referred to the curtailment plan proposed in Docket No. RP71–107.

The orders of the Commission are

Affirmed.

LEVENTHAL, Circuit Judge, did not participate in the disposition of this case.