**COMMONWEALTH OF VIRGINIA,**
Appellee,

v.

**TENNECO, INC., et al., Appellants,**

**Federal Power Commission, Intervenor.**

No. 75–1282.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 12, 1975.

Decided Feb. 20, 1976.

---

Gregory Grady, Washington, D.C. (Melvin Richter, Harold L. Talisman, Washington, D.C., L. F. Cadenhead, L. R. Pankonien, Houston, Tex., Littman, Richter, Wright & Talisman, Washington, D.C., on brief), for appellant.

Allan Abbot Tuttle, Sol., Washington, D.C. (Drexel D. Journey, General Counsel, John R. Staffier, William J. Grealis, Washington, D.C., on brief), as amicus curiae for F.P.C.

Diana J. Pioske, Asst. Atty. Gen. of Va., Richmond, Va. (Andrew P. Miller, Atty. Gen. of Va., Anthony F. Troy, Chief Deputy Atty. Gen. of Va., and Frederick S. Fisher, Asst. Atty. Gen. of Va., Richmond, Va., on brief), for appellee.

Before WINTER, CRAVEN and WIDENER, Circuit Judges.

WINTER, Circuit Judge:

This is an appeal from a temporary restraining order (TRO) prohibiting a supplier of natural gas from reducing allocations of gas to a customer in accordance with the former's plan for the allocation of gas supplies during periods of short supply. Initially the case presents questions of appealability, the timeliness of the appeal, and mootness. On the merits, the principal issue is whether the district court exceeded its jurisdiction by improperly interfering with the regulation of natural gas by the Federal Power Commission (FPC). Finally, if it is concluded to vacate the TRO, we must decide which forum should determine the need and form of redress of the consequences of the order.

We hold that the TRO is appealable, that the appeal was timely, and that this case is not moot. Further, we conclude that the TRO was improvidently entered; however, FPC, rather than the district court, is the proper body to determine what action, if any, should be taken to redress the effects of the TRO.

I.

Tennessee Gas Pipeline Company (Tennessee), a division of Tenneco, Inc. (Tenneco), supplies natural gas to East Tennessee. Natural Gas Company (East Tennessee) which in turn supplies gas to Colonial Natural Gas Company (Colonial). Both Tennessee and East Tennessee are subject to regulation by FPC, both as to the quantities of gas they sell and the selling price.

Because Tennessee currently has insufficient natural gas available to fulfill all of its contractual obligations, it is obliged to curtail deliveries to its customers from time to time. Tennessee filed a curtailment plan with FPC on September 28, 1973, and this plan was placed into effect by Commission order dated October 30, 1973. The plan states that Tennessee shall periodically determine the volume available for affected services for appropriate curtailment periods; and if the volume is less than the estimated requirements of affected services for the period involved, Tennessee shall determine the quantity of gas which each customer shall be entitled to receive and shall promptly notify each affected customer of its curtailment period quantity entitlement.

On October 31, 1974, after this curtailment plan had become effective, East Tennessee, whose supplies are subject to reduction under Tennessee's plan, filed tariff sheets with FPC under § 4 of the Natural Gas Act, 15 U.S.C. § 717c, reflecting a plan for the allocation of gas supplies during periods of supply shortage. These tariff sheets provide that if the quantities of gas which East Tennessee has available for distribution in a given curtailment period shall fall short of total customer requirements, East Tennessee shall compute the amount of gas which each customer will receive

according to the priority category into which the customer fits, and shall give notice of the reduced allotment as promptly as possible and "as far in advance and allocated over as long a period of time as is possible and reasonable." After suspension for one day, this plan took effect on November 27, 1974.

As of December 2, 1974, it was anticipated that, given the volume of gas supplies then thought to be available to East Tennessee, Colonial would receive, pursuant to the terms of East Tennessee's curtailment plan, 60% of Colonial's supply entitlement for the winter heating period from December 16, 1974 through March 31, 1975. However, on December 13, 1974, Tennessee advised East Tennessee that the latter would be receiving less gas for the winter season than was previously anticipated. East Tennessee thereupon immediately informed its customers that due to this reduction in deliveries, curtailment to many of them, including Colonial, would be increased. Colonial would thus receive only 45% of its entitlement rather than 60% thereof.

On December 23, 1974, Colonial filed with FPC, by telegram, a request for extraordinary relief from curtailment. This was followed on December 30, 1974 by a formal petition for extraordinary relief from the effects of the increased curtailments announced by East Tennessee on December 13, 1974. FPC, by order dated January 17, 1975, granted interim relief to Colonial for thirty days, and by FPC's order dated February 21, 1975, such interim relief was continued pending a final decision on Colonial's petition for extraordinary relief.

However, on December 31, 1974, prior to the Commission's granting of interim relief, the Commonwealth of Virginia (Virginia), acting in its capacity as *parens patriae*, filed an action in the district court. Alleging that the curtailment violated the notice provisions of 15 U.S.C. § 717c and would result in plant shutdowns and massive unemployment in the southwest portions of the state, Virginia asked that Tenneco, Tennessee, and East Tennessee be permanently enjoined from implementing the increased curtailments announced on December 13, 1974. In addition to the prayer for a permanent injunction, the complaint prayed a TRO preventing such implementation pending final disposition of the case.

On December 31, the district court held a hearing on the request for the TRO. FPC participated by counsel, contending that the district court lacked jurisdiction to receive the complaint or to grant the requested relief. The district court, however, issued an order requiring defendants to continue deliveries to Colonial in volumes equal to 55% of its supply entitlement. Specifically, the TRO directed defendants "to continue supplying natural gas to Colonial Natural Gas Company at a daily volume of 1802 Mcf in addition to the curtailment period quantity entitlement established by said company by letter of December 19 [sic], 1974." By its terms, the TRO would remain in effect until January 7, 1975.

On January 3, 1975, Tenneco, Tennessee, and East Tennessee moved the district court to vacate the TRO on the grounds that, under the Natural Gas Act, FPC had primary jurisdiction over the sale of natural gas in interstate commerce and that Colonial had failed to exhaust its administrative remedies before the Commission. Three days later, FPC moved to intervene and, also, to vacate the TRO and to dismiss the complaint. FPC's motion to intervene was not acted on by the district court, but we allowed intervention in this court.

On January 20, 1975, the district court entered an order dismissing the complaint on the ground that the time limit of the TRO had expired, and that Colonial was then seeking relief from FPC which was exercising jurisdiction in the matter. The order of dismissal made no provision with regard to the amounts of gas in excess of the curtailment announced by the letter of December 13, 1974, which Colonial was entitled to take under the authority of the TRO.

## II.

The parties agree, as do we, that ordinarily a TRO is not an appealable order

within the provisions of 28 U.S.C. §§ 1291 and 1292. There are exceptions to the rule, however, when, as here, the TRO was entered after full hearing in which plaintiff, defendants and FPC fully participated and the TRO bespeaks of the nature of a preliminary injunction, although of limited duration, rather than an order entered *ex parte* or on less than a full presentation of the facts. *Connell v. Dulien Steel Products,* 240 F.2d 414, 417–18 (5 Cir. 1957). Under such circumstances, it is appealable under 28 U.S.C. § 1292.

More important as a reason for holding this TRO appealable is a consideration of its practical effect, as *Gillespie v. United States Steel Corp.,* 379 U.S. 148, 152–53, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964), directs. Virginia's suit was founded on the theory that East Tennessee's December 13 curtailment advice was in violation of the notice requirements of the Natural Gas Act, 15 U.S.C. § 717c and the regulations adopted thereunder, notwithstanding that tariff sheets which purported to authorize the giving of such advice had been filed and notice of that filing given. It prayed that the December 13 curtailment be enjoined "until such time as the notice provisions of the Natural Gas Act have been met *and the curtailment has been approved by the Federal Power Commission* (emphasis added)." Thus, it was not contemplated that the action in the district court would finally adjudicate East Tennessee's right to curtail service. The TRO recited that it was necessary "until such time as the Federal Power Commission can act." * It was not intended to be supplemented by a temporary or permanent injunction; it was an end in itself, arrived at after full litigation by the interested parties.

The district court's January 20 order dismissing the complaint implicitly recognized that the TRO effectively granted the plaintiff all of the relief which it sought. In such a situation, an order which is ordinarily interlocutory is sufficiently final to be appealable. *Peabody v. Local 1734, UMW,* 484 F.2d 78 (6 Cir. 1973). *See also Kimball v. Commandant Twelfth Naval District,* 423 F.2d 88 (9 Cir. 1970) (denial of TRO appealable where such denial effectively decides the merits of the case). Moreover, coupled with the unqualified dismissal of the complaint, the TRO had the effect of allowing Colonial to keep whatever gas it took in excess of its curtailment allotment during the period that the order was in effect. Thus, looking to the practical effect of the TRO as *Gillespie* dictates, we conclude that this order was final and appealable under 28 U.S.C. § 1291.

### III.

■ Defendants' appeal was timely. Virginia's argument that it was not is based on the contention that the notice of appeal, filed February 14, 1975, was filed more than thirty days after entry of the TRO on December 31, 1974. *See* Rule 4, F.R.A.P. The argument overlooks, however, the fact that defendants moved to vacate the TRO on January 6, 1975. This motion qualifies as a motion "to alter or amend judgment" within the meaning of Rule 59, F.R.Civ.P., 9 Moore's Federal Practice, ¶ 204.12[1] at 951. It was not decided until the district court's order of dismissal entered on January 20, 1975.

By the terms of Rule 4(a), F.R.A.P., the "full time for appeal [thirty days] . . . commences to run and is to be computed from the entry of [the] . . . [order] granting or denying a motion under Rule 59 to alter or amend the judgment . . . ." January 20, 1975 was thus the date that the appeal period of thirty days began to run, and February 14, 1975 was within the period.

### IV.

■ We reject Virginia's contention that this case is moot. It argues that the pur-

---

\* The TRO did not fully accomplish this purpose because FPC did not begin its hearings on the curtailments until January 17. Undoubtedly, the expiration date for the district court's order was derived from an allegation in the complaint that the defendants were under an order by FPC to appear before it on January 7 to justify the curtailments.

pose of the appeal is to establish that the district court lacked subject matter jurisdiction of the suit, but that since the district court has dismissed the complaint and is no longer exercising jurisdiction, we are being improperly asked to give an advisory opinion.

There are two flaws in the argument. First, it must be remembered that the TRO authorized Colonial to take gas in excess of East Tennessee's curtailment under its tariff. Before us, the parties do not dispute the likelihood that Colonial took some or all of its court-ordered additional allocation. If the gas was obtained under an illegal order, it is subject to restitution. *See United ed Gas Pipe Line Co. v. Mobile Gas Service Corp.,* 350 U.S. 332, 347, 76 S.Ct. 373, 100 L.Ed. 373 (1956). Of course, any gas obtained by Colonial in January, 1975, has already been consumed. But natural gas is a fungible commodity and restitution could be effected by a refund out of any of Colonial's allotments. The district court's order dismissing the complaint after the expiration of the TRO was silent on the question of any restitution. Thus, redress of the consequences of the TRO is an existing, unresolved question.

Second, even if Colonial consumed no portion of its court-ordered allocation, Colonial had a right to do so while the TRO was effective. Since the phenomena of a short supply of natural gas is a national one and regrettably not transitory, Tennessee and East Tennessee, as well as other interstate pipelines, run a substantial risk of other similar suits and similar TRO's in the district courts of this and other circuits. If these cases were mooted simply by the expiration of the TRO's which under F.R.Civ.P. 65 generally run no longer than twenty days, it would be virtually impossible to gain appellate review. The important questions raised by the issuance of these TRO's would therefore remain unresolved indefinitely. Thus, we think that the TRO in the instant case presents a controversy "capable of repetition, yet evading review," *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 713,

35 L.Ed.2d 147 (1973), and review should not be denied under the mootness doctrine.

### V.

We consider the district court's jurisdiction to entertain the suit and to enter the TRO.

*Federal Power Commission v. Louisiana Power & Light Co.,* 406 U.S. 621, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972), compels the conclusion that the district court lacked jurisdiction over the subject matter of the suit; it also lacked authority to enter the TRO. *Louisiana Power* decided two questions: (1) whether the proviso to § 1(b) of the Natural Gas Act, 15 U.S.C. § 717(b), prohibited FPC from requiring pipelines otherwise subject to its jurisdiction to report whether future curtailments of supply would be necessary because of an inadequate supply of natural gas and, if so, to file a revised tariff as to how available supplies would be allocated among existing customers, and (2) whether the doctrine of primary jurisdiction obliged federal courts to defer to FPC for an initial determination of FPC's jurisdiction over previously intrastate pipelines in a certification proceeding pending before the Commission.

■ The litigation started as a suit by Louisiana Power to enjoin its natural gas supplier from reducing the supply of gas available to it below the level provided in its supply contract. The supplier was proposing to curtail deliveries in accordance with the curtailment provisions of its tariff filed with FPC. Louisiana Power argued that while FPC had extensive jurisdiction over sales for resale, FPC had only limited authority with respect to direct sales in interstate commerce and that authority did not extend to curtailment. The Court, however, rejected Louisiana Power's argument. It said that the view that FPC did not have curtailment jurisdiction over direct interstate sales would not only "produce a seriously inequitable system of gas distribution," 406 U.S. at 632, 92 S.Ct. at 1834 [but also would create] "contradictory regulations [among the states] that cannot possibly be equitably resolved by the

courts." 406 U.S. at 634, 92 S.Ct. at 1836. The Court therefore found that "the desirability of uniform federal regulation [is] abundantly clear," 406 U.S. at 634–35, 92 S.Ct. at 1836 and concluded that the Commission did have curtailment jurisdiction over direct sales of gas in interstate commerce. 406 U.S. at 647, 92 S.Ct. 1827. The Court's judgment reversed that of the Fifth Circuit and reinstated the judgment of the district court.

■ Since the district court had dismissed the complaint for lack of jurisdiction and failure to exhaust administrative remedies, the first holding in *Louisiana Power* stands as an adjudication that district courts lack jurisdiction to entertain actions with respect to matters within the primary jurisdiction of FPC. The Court's second holding in the case is specific in this regard. It stated flatly that where FPC was exercising its jurisdiction to determine whether a formerly intrastate gas company had become subject to its jurisdiction, "the District Court and the Court of Appeals were obliged to defer to the FPC for the initial determination of its jurisdiction." 406 U.S. at 647, 92 S.Ct. at 1842. *See also International Paper Co. v. FPC,* 476 F.2d 121 (5 Cir. 1973); *Michigan Power Co. v. FPC,* 161 U.S.App.D.C. 221, 494 F.2d 1140 (1973); *American Smelting and Refining Co. v. FPC,* 161 U.S.App.D.C. 6, 494 F.2d 925 (1974).

■ The Supreme Court's rationale in *Louisiana Power* may be easily restated as it applies to the instant case. The overall supply of natural gas is limited, and Tenneco, Tennessee, and East Tennessee do not have access to sufficient quantities to provide all customers with the amounts that those customers either desire or have contracted to purchase. In such a situation, it is manifest that any additional gas which is obtained by one customer must be taken from another, and that the granting of even limited relief to Virginia, by increasing the allocation to Colonial, meant that customers other than Colonial suffered additional curtailment. Thus, the proper resolution of Virginia's claim required a balancing of the conflicting needs and interests of all of the customers of Tenneco, Tennessee, and East Tennessee.

FPC is a far more appropriate body than a district court to make such a determination. As operators of interstate pipelines, defendants serve customers in states other than Virginia outside the geographic jurisdiction of the district court; FPC, on the other hand, has nationwide jurisdiction. Moreover, FPC has more expertise in matters relating to the natural gas industry than does a federal court of general jurisdiction. Because of these factors, FPC should be the adjudicatory body which resolves a curtailment problem in the first instance, subject of course to the statutory right of review of its final decision.

For these reasons, we hold that the district court lacked jurisdiction over the subject matter of Virginia's suit. The complaint should have been dismissed without entry of the TRO.

## VI.

We turn to the question of what further relief, if any, should be afforded to redress the improvident entry of the TRO.

The TRO, during the period that it was effective, permitted Colonial to obtain a daily volume of 1802 Mcf of gas in addition to the curtailment period quantity entitlement established by East Tennessee. This litigation has proceeded on the basis that Colonial took some or all of the additional allocation allowed by the court. The record does not reflect, however, the exact quantity of the court-ordered allocation which Colonial took during the effective period of the TRO, nor does the record reflect the quantities of gas taken by Colonial over any longer period. Additionally, the record does not reflect the precise interim relief afforded Colonial by FPC's orders entered during and subsequent to the pendency of the instant case.

■ There is another factor which complicates the question of what relief defendants should be afforded. Under East Tennessee's allocation to Colonial, the quantity of gas which Colonial was entitled to re-

ceive was not fixed on a daily basis. The allocation was for an overall period beginning December 16, 1974 and lasting through March 31, 1975. The allocation could be used as Colonial saw fit, provided it did not exceed its precurtailment daily contract allotments. As Thomas R. Bell, President of East Tennessee, testified, Colonial had "the ability to take any volume of gas they desire within that period, on any day within that period, as long as it remains within the volume that they are entitled to on any one day under their contract. The curtailment has no effect on their ability to take gas on a daily basis."

Thus, for the period December 16, 1974 through March 31, 1975, we cannot determine (a) whether Colonial in fact took gas in excess of the quantities allocated to it by East Tennessee under the latter's tariff, as amended by FPC's orders granting Colonial interim extraordinary relief, and, if so, the quantity of such excess, (b) whether East Tennessee's supply during that period was so limited as per its expectation that any of East Tennessee's other customers suffered injury, and (c) whether Colonial should be required to make a refund. Ordinarily such matters would be appropriate for consideration by the district court on remand. But, in accordance with the doctrine of primary jurisdiction articulated in *Louisiana Power,* we think that these questions should be determined by FPC, which not only has ready access to the needed factual data but the expertise to interpret and apply it in order to arrive at an equitable solution of the problem of refund.

Accordingly, we hold only that the TRO should be reversed and the complaint dismissed for lack of jurisdiction, without prejudice to FPC's consideration of whether Colonial should be required to make a refund to East Tennessee, and, if so, the amount of the refund and the mechanics of effecting it. We invite FPC to exercise its jurisdiction in these regards.

REVERSED AND REMANDED.

WIDENER, Circuit Judge, concurs in the result.