**FEDERAL TRADE COMMISSION,**
Petitioner,

v.

**FOOD TOWN STORES, INC., and Lowe's Food Stores, Inc., Respondents.**

**Misc. No. 76–8264.**

United States Court of Appeals,
Fourth Circuit.

Aug. 13, 1976.

Robert J. Lewis, Gen. Counsel, Gerald P. Norton, Deputy Gen. Counsel, Gerald Harwood, Asst. Gen. Counsel, David M. Fitz-Gerald, F. T. C., Washington, D. C., for petitioner.

H. Grady Barnhill, Jr., Winston-Salem, N. C., Thomas M. Caddell, Salisbury, N. C., Rayner M. Hamilton, New York City, for respondents.

## MEMORANDUM AND ORDER

WINTER, Circuit Judge.

    Application has been made to me for an injunction pending appeal, pursuant to Rule 8, F.R.A.P., prohibiting the consummation of a merger between Food Town Stores, Inc. (Food Town) and Lowe's Food Stores, Inc. (Lowe's), which is scheduled to become effective by the filing of articles of merger at 5:00 p. m. on August 11, 1976. The district court denied relief, except to grant a temporary stay to provide the Court of Appeals sufficient time to consider and act upon the motion. It is impossible to convene a panel of the court in time to hear and decide the motion, and I will decide it as a single circuit judge. The motion and the supporting documents, including a brief, and a memorandum in opposition thereto, including supporting papers, have been read and considered, and counsel heard in chambers.

I conclude that an injunction pending appeal should be granted.

### FACTS

On August 6, 1976, the Federal Trade Commission (FTC) filed an application in the United States District Court for the Middle District of North Carolina for a temporary restraining order (TRO), and a preliminary injunction pursuant to § 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b) (1976 Cum.Supp.), to enjoin the consummation of a merger between Food Town and Lowe's. The injunction was sought in aid of an FTC administrative proceeding which was instituted on August 4, 1976, challenging the merger as violating

§ 7 of the Clayton Act, 15 U.S.C. § 18, and § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. The administrative complaint alleged that if permitted to become effective, the merger would eliminate competition between Food Town and Lowe's in six cities or towns of North Carolina and their trading areas, would increase concentration in those markets, would eliminate potential competition in other markets, would eliminate potential competition in other markets in West-Central North Carolina, and would increase barriers to entry into the retail food store business in some or all of the markets involved. The stockholders of both Food Town and Lowe's approved the merger on August 10, 1976, and the merger will become effective upon the filing of the articles of merger with the Secretary of State of North Carolina, or within six days thereafter.

The matter was submitted to the district judge on August 9, 1976, on the papers and affidavits, some of which were not filed until August 8, 1976, and on oral argument. On August 10, 1976, the district court denied the TRO, but enjoined the filing of articles of merger until 5:00 p. m. on August 11, so as to permit the instant application to be made.

FTC's motion presents two questions: the first is whether the order of the district judge is appealable so as to vest jurisdiction in the Court of Appeals to consider granting an injunction pending appeal on its merits, and, second, has FTC shown its entitlement to an injunction pending appeal?

## JURISDICTION

Food Town and Lowe's vigorously assert that the order of the district judge denying the TRO is not an appealable order and therefore the Court of Appeals lacks jurisdiction to grant an injunction pending appeal. Analysis of the merits of this argument must begin with consideration of the statute under which the Commission instituted the proceeding in the district court. The pertinent provisions of § 13 of the Act, 15 U.S.C. § 53, follow:

Temporary restraining orders; preliminary injunctions

(b) Whenever the Commission has reason to believe—

(1) that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and

(2) that the enjoining thereof . . until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon becomes final, would be in the interest of the public— the Commission . . . may bring suit in a district court of the United States to enjoin any such act or practice. Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond . . . . .

■ It is at once obvious that in a proceeding under § 13, the granting or denial of a temporary restraining order or a preliminary injunction is an end unto itself. The district court is not authorized to determine whether the antitrust laws have been or are about to be violated. That adjudicatory function is vested in FTC in the first instance. The only purpose of a proceeding under § 13 is to preserve the *status quo* until FTC can perform its function.

■ Viewed in this light, the conclusion follows that the district court's denial of a TRO effectively terminated the litigation and constituted a final order which is appealable under 28 U.S.C. § 1291. The case is quite like our recent decision in *Commonwealth of Virginia v. Tenneco, Inc.*, 4 Cir., 538 F.2d 1026 (February 20, 1976), in which we concluded that since a temporary restraining order effectively granted the plaintiff all of the relief which it sought, the order was sufficiently final to be appealable. Of course, in the instant case the temporary restraining order was denied,

but the effect of the denial was to deny FTC the only relief which it sought.

Additionally, the denial of the temporary restraining order is appealable under 28 U.S.C. § 1292. The TRO order was denied after full hearing in which the parties fully participated, and the practical effect of the denial, under the facts of the case, will be effectively to prevent FTC from carrying out its statutory duty of prohibiting a merger which violates § 7 of the Clayton Act and § 5 of the Federal Trade Commission Act. If articles of merger are filed on August 11, 1976, and permitted to become effective, any proceeding in the district court for a preliminary or permanent injunction will be rendered moot. *Commonwealth of Virginia v. Tenneco, Inc., supra.* I deem the fact that FTC might subsequently order a divestiture, if the merger is consummated and if it violates federal antitrust laws, irrelevant. Divestiture may not be as effective a remedy as prevention of a merger, but in any event, FTC has a statutory duty to *prevent* illegal mergers as well as to disassemble them.

### ENTITLEMENT TO INJUNCTION

In passing upon the merits of FTC's motion for an injunction pending appeal, I consider first the factors which may properly be given weight under § 13(b). Counsel for defendants press on me the statements contained in my opinion in *Long v. Robinson*, 432 F.2d 977 (4 Cir. 1970). Although *Long* was not cited by the district court in its 18-page order (which counsel for defendants admit was prepared by them at the district court's request and adopted by the court), the format of *Long* was followed in arriving at the decision to deny the TRO. From my examination of the law, I think *Long* largely inapposite.

Section 13(b) prescribes as the test for granting injunctive relief "the interest of the public," and it authorizes a district court to grant injunctive relief when "weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest . . . .." The equities to be weighed are not, however, the usual equities in private litigation, to which so much attention was given in *Long*. This is made clear by Conference Committee Report No. 93–924 concerning P.L. 93–153, the legislation which enacted § 13(b) as it presently exists. *See* 2 U.S.Code Cong. and Admin.News, 93 Cong., 1st Sess., pp. 2523, *et seq.* (1973). In speaking of the language which was codified as § 13(b), the Report states:

16. Section 408(f) relates to the standard of proof to be met by the Federal Trade Commission for the issuance of a temporary restraining order or a preliminary injunction. It is not intended in any way to impose a totally new standard of proof different from that which is now required of the Commission. The intent is to maintain the statutory or "public interest" standard which is now applicable, and *not* to impose the traditional "equity" standard of irreparable damage, probability of success on the merits, and that the balance of equities favors the petitioner. This latter standard derives from common law and is appropriate for litigation between private parties. It is not, however, appropriate for the implementation of a Federal statute by an independent regulatory agency where the standards of the public interest measure the propriety and the need for injunctive relief.

The inclusion of this new language is to define the duty of the courts to exercise independent judgment on the propriety of issuance of a temporary restraining order or a preliminary injunction. This new language is intended to codify the decisional law of *Federal Trade Commission v. National Health Aids*, D.C., 108 F.Supp. 340 and *Federal Trade Commission v. Sterling Drug, Inc.,* 317 F.2d 669, and similar cases which have defined the judicial role to include the exercise of such independent judgment. The Conferees did not intend, nor do they consider it appropriate, to burden the Commission with the requirements imposed by the traditional equity standard which the common law applies to private litigants. (Emphasis in original.) *Id.,* p. 2533.

For the effect of the 1973 legislation, *see also, F.T.C. v. Simeon Management Corp.*, 532 F.2d 708 (9 Cir. 1976).

As I view the statute, it prescribes as standards (1) the likelihood of success, and (2) a balancing of *public* equities. I therefore consider them:

## A. *Likelihood of Success*

As I view the case, FTC has demonstrated a substantial likelihood of success in the administrative proceedings which have been instituted. I, of course, do not decide the case, but the following considerations lead me to this conclusion.

Section 7 of the Clayton Act, 15 U.S.C. § 18, prohibits mergers which may substantially lessen competition or tend to create a monopoly in any line of commerce in any section of the country. Interpreting this section, the Supreme Court has held that "a merger which produces a firm controlling an undue percentage share of the relevant market, and results in a significant increase in the concentration of firms in that market, is so inherently likely to lessen competition substantially that it must be enjoined in the absence of evidence showing that the merger is not likely to have such anticompetitive effects." *United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 363, 83 S.Ct. 1715, 1741, 10 L.Ed.2d 915 (1963).

The relevant market is determined by two factors: the product market or "line of commerce" and the geographical market or "section of the country." While it is conceded that Food Town and Lowe's sell the same product, it is argued that they do not serve the same areas. The test under § 7 is: Where, as a practical matter, can the purchaser turn for alternatives? *See United States v. Connecticut Nat'l Bank*, 418 U.S. 656, 668, 94 S.Ct. 2788, 41 L.Ed.2d 1016 (1974).

FTC contends that in a predominantly rural region the relevant market is the town or city. The presidents of Food Town and Lowe's dispute this claim, arguing for a smaller market definition, but concede that their stores do serve the same trading areas in "a very limited number of store loca-

tions," including some in Winston-Salem, Kannapolis, and Mt. Airy, North Carolina. Of course, if the two chains serve the same markets, no matter how small, their merger must be scrutinized to determine if it may substantially lessen competition, i. e., if it results in a firm controlling an undue share of the market and increases concentration.

FTC's data is computed on the basis of cities and counties. Food Town and Lowe's argue that this is too imprecise an approximation to satisfy the standards laid down in *Connecticut Nat'l Bank, supra.* Beyond this, they apparently concede the correctness of the data. While greater precision may ultimately be required for the FTC to prevail in its administrative proceeding, the available information is sufficient to establish a likelihood of success.

In Winston-Salem, each chain operates three stores. In 1975, Food Town's share of the *city* market was 8.3%; Lowe's share was 2.7%. Combined, the chains would command 11.0%. The combined market share has grown from 5.8% in 1972. The top four firms presently control 40.7% of the market in Forsyth County, which includes Winston-Salem, up from 28.7% in 1972. If the merger is consummated, the top four firms' county market share would grow to 42.9%.

In Kannapolis, Food Town operates two stores, Lowe's, one. In 1975, Food Town's share of the city market was 28.6%; Lowe's share was 3.7%. Combined, the chains would command 32.3%. The combined *city* market share has grown from 22.6% in 1972. The top four firms presently control 56.3% of the market in Rowan County, which includes Kannapolis, up from 54.1% in 1972. If the merger is consummated, the top four firms' county market share would grow to 58.4%.

In Mt. Airy, each chain operates two stores. In 1975, Food Town's share of the city market was 50.9%; Lowe's was 21.6%. Combined, the chains would command 72.5%, a virtual monopoly. The combined *city* market share has grown from 68.0% in 1972. The merger would not affect "top-

four" concentration in the Mt. Airy market, largely because the market is already so highly concentrated.

Both firms have been aggressive competitors in the past. Since 1972, Lowe's has opened markets in three cities in which Food Town operated, and Food Town has opened markets in two cities in which Lowe's operated. Food Town's sales have grown by 160% since 1972, Lowe's sales by 123%. In contrast, industry sales have advanced only 57% in the same period.

This largely undisputed evidence shows that in at least three cities, the grocery business is either already heavily concentrated or is becoming so; that the proposed merger would further increase concentration or result in a near-monopoly; that the market share of the combined firms would range from 11.0% to 72.5%; and that the firms have in the past been vigorous competitors. Under similar circumstances, the Supreme Court has held a merger of grocery chains to violate § 7, although the resulting firm would command only 7.5% of the market. *United States v. Von's Grocery Co.,* 384 U.S. 270, 86 S.Ct. 1478, 16 L.Ed.2d 555 (1966).

While statistical evidence is not conclusive, it is sufficient to establish a *prima facie* case and require the firms seeking to merge to show "that the merger is not likely to have . . . anticompetitive effects." *Philadelphia Nat'l Bank,* 374 U.S. at 363, 83 S.Ct. at 1741. Food Town and Lowe's make two countervailing arguments. First, they argue that Lowe's is in such poor financial condition that absent the merger it will cease to be an effective competitor anyway. While Lowe's may have some substantial short-term liabilities, its financial statements, filed in connection with the merger, show it to be solvent and profit-making. Thus, it is unlikely that the so-called "failing company" defense will be available. Second, it is claimed that the competitive overlaps between the two firms are *de minimis,* and could be cured by divestiture. The fact that the markets in which the firms compete may be small is irrelevant under the Clayton Act, and does not

affect the legality of the merger. And while divestiture may be the ultimate remedy, under § 13(b) of the Federal Trade Commission Act, FTC is entitled to preserve the *status quo* pending adjudication. Stated otherwise, I am persuaded that Congress intended that if divestiture is practicable and necessary to avoid a § 7 violation, it must be undertaken *before* the merger is consummated.

### B. *Public Equities*

Defendants urged, and the district court ruled, that they would be substantially harmed by interim injunctive relief. Specifically, the district court found that (1) if the merger is not effective within forty-eight hours after August 10, 1976, Lowe's might be subjected to a lawsuit by one of its substantial creditors and stockholders as a result of a contract made with it; (2) if the merger is postponed, Food Town would be required to amend its registration statement with the SEC with regard to its shares to be issued in exchange for shares of Lowe's in accordance with the merger; (3) the market value of Food Town's stock might be adversely affected by any delay, and since the merger agreement permits either party to rescind it if the merger is enjoined, Food Town may be forced or elect to rescind as a result of economic pressures; (4) Lowe's home office and warehouse employees are apprehensive about the effect of the merger, and further uncertainty about whether the merger will become effective may result in loss of personnel; (5) payment of a substantial indebtedness of Lowe's, due October 15, 1976, will be made possible as a result of the merger, and any delay in the merger will require Lowe's to find substantial new financing on very short notice; (6) postponement of the merger before the stockholders' meetings might have required the solicitation of new proxies; and (7) an expert witness, on whom defendants would rely, might not be available if disposition of the application for a temporary restraining order is not made promptly.

All of these reasons go to the *private* injury which may result from an injunction delaying the merger. I do not minimize them, but I conclude that they are of such a nature that they are not proper considerations for granting or withholding injunctive relief under § 13(b). My conclusion in this respect is reinforced by recognition that many of them would result if any merger is enjoin..d on the eve of its consummation; yet Cong; ess enacted § 13(b) authorizing injunctive relief, thereby indicating that it thought that little weight should be given to them.

Defendants do advance a consideration which falls into the category of the public interest. The record establishes that Food Town has been a discounter in the retail grocery business and that as a result the buying public can purchase more economically at Food Town than at Lowe's or any of Food Town's other competitors. An officer of Food Town represented that if the merger becomes effective, Food Town's discounting policy will be extended to the former Lowe's stores, and the argument is advanced that the public will thereby be benefitted.

Of course, lower retail food prices are in the public interest. I do not question the good faith of the representation by the officer of Food Town, but I am also not unaware that the classic approach of a would-be monopolist is to undersell the market until market control has been obtained and thereafter to adjust prices upwards to profit the successful monopolist. The persuasiveness of the representation made on Food Town's behalf is diluted by the fact that Food Town is not bound to extend, or, if it initially extends, to continue, its discounting policies at the former Lowe's stores. Thus, I deem the public benefit to be created as a result of the merger too speculative to rely on it alone as a permissible basis on which to deny injunctive relief.

Overall, I conclude that the district court's denial of a TRO is under the circumstances of this case a final order appealable under 28 U.S.C. § 1291, or an interlocutory order appealable under 28 U.S.C. § 1292. I am persuaded that on the merits of the administrative proceeding before FTC, FTC has demonstrated a substantial likelihood of success. In denying a temporary restraining order, the district court applied erroneous legal standards in determining whether or not the TRO should issue. When the correct legal standards are applied, I think that FTC has demonstrated that it is in the public interest that interim injunctive relief should be granted. Accordingly, I have granted an injunction pending appeal prohibiting the parties from the consummation of a merger between Food Town and Lowe's. The injunction was entered and was effective at 4:30 p. m. on August 11, 1976.

If any one of the parties is disposed to make a request therefor, I will grant a motion to advance the appeal and direct the clerk to fix an accelerated briefing schedule.

IT IS SO ORDERED.