CF INDUSTRIES, INC. and Farmers
Chemical Association, Inc.,
Appellants,

v.

TRANSCONTINENTAL GAS PIPE LINE
CORPORATION, Appellee.

CF INDUSTRIES, INC. and Farmers
Chemical Association, Inc.,
Appellees,

v.

TRANSCONTINENTAL GAS PIPE LINE
CORPORATION, Appellant.

Nos. 79–1359, 79–1366.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 4, 1979.

Decided Jan. 8, 1980.

See also, D.C., 452 F.Supp. 358.

Alfred H. Ebert, Jr., Houston, Tex., for Transcontinental.

Joseph G. Stiles, Washington, D.C., for Federal Energy Regulatory Commission.

Stephen A. Herman, Washington, D.C. (Nolan E. Clark, Thomas W. Queen, Kirkland & Ellis, Washington, D.C., E. Osborne Ayscue, Jr., Helms, Mullis & Johnston, Charlotte, N.C., William H. McCullough, Robert W. Spearman, Sanford, Adams, McCullough & Beard, Raleigh, N.C., Anthony E. Cascino, Jr., Long Grove, Ill., on brief), for CF Industries, Inc. and Farmers Chemical Ass'n, Inc.

Before BUTZNER, Circuit Judge, FIELD, Senior Circuit Judge, and WIDENER, Circuit Judge.

FIELD, Senior Circuit Judge:

Transcontinental Gas Pipe Line Corporation (TRANSCO) has moved this court for an order referring certain underlying issues involved in this litigation to the Federal Energy Regulatory Commission (Commission) and for a stay of the appeals pending the Commission's determination of such issues.

TRANSCO is engaged in the sale of natural gas in interstate commerce pursuant to certificates of public convenience and necessity issued under the Natural Gas Act of 1938, 15 U.S.C. § 717, et seq., by the Commission and its predecessor, the Federal Power Commission.[1] TRANSCO's transmission system extends from its sources of natural gas supply in the Gulf states through the southeastern United States into Pennsylvania, New Jersey and its termini in the metropolitan area of New York. CF Industries, Inc. (CF) and Farmers Chemical Association, Inc. (FCA) own and operate a fertilizer plant in Tunis, North Carolina. The plant is designed to use natural gas for processing purposes and for plant boiler fuel, and is served by the North Carolina Natural Gas Corporation (NCNG), which is the retail distributor of natural gas in the Tunis area. NCNG is supplied with gas at wholesale by TRANSCO under certificates issued by the Commission and pursuant to a service agreement and tariffs on file with the Commission which have been approved by it pursuant to regulations issued under the Act.

TRANSCO experienced shortages in natural gas supplies in the areas of its traditional sources and began curtailing deliveries from its pipeline system in 1971. These curtailments were made under tariff provisions approved or ordered by the Commission or the courts. In December of 1975 curtailments on TRANSCO's system reached the point that NCNG found it necessary to curtail its deliveries to the Tunis plant. CF and FCA instituted suit against TRANSCO on May 18, 1977, in the United States District Court for the Western District of North Carolina. In the original and amended complaints CF and FCA alleged the following causes of action:

(1) the breach by TRANSCO of its contract to deliver to NCNG certain quantities of natural gas on an uninterrupted basis to be used at plaintiffs' Tunis plant;

(2) negligent performance of that contract by TRANSCO resulting in foreseeable injury to the plaintiffs' operation;

(3) fraud on the part of TRANSCO incident to the negotiations between it and FCA during the period from 1965 to 1969 relative to the location and construction of the Tunis plant; and

(4) violation by TRANSCO of North Carolina's Monopolies, Trusts and Consumer Protection Act. N.C.G.S. § 75–1.1.

Contending that the complaint raised a number of issues falling within the expertise of the Commission and having an impact upon its regulatory responsibility, TRANSCO twice filed motions in the district court requesting that these issues be referred to the Commission so that it might exercise its primary jurisdiction on such issues. TRANSCO's initial motion was denied by an order and opinion of the district court on May 15, 1978. CF Industries, Inc. v. Transcontinental, etc., 452 F.Supp. 358 (W.D.N.C.1978). TRANSCO's second motion was denied by order entered in the district court on October 6, 1978. The district court declined to certify these orders for an immediate appeal under 28 U.S.C. § 1292(b), and the case proceeded to trial before a jury which determined that CF and FCA were entitled to recover damages from TRANSCO in the amount of $23,815,-636.80.[2] Judgment was entered upon the jury verdict and these appeals followed.

On February 28, 1979, TRANSCO filed with the Commission a petition for the Institution of a Proceeding and for a Declara-

---

1. The term "Commission" when used in this opinion and order refers to the Federal Energy Regulatory Commission or, where appropriate, to its predecessor, Federal Power Commission.

2. Prior to trial the district court dismissed the plaintiffs' fourth claim which was based on N.C.G.S. § 75–1.1.

tory Order, FERC Docket No. TC79–8. The petition requested, among other things, that the Commission conduct an investigation into the facts and circumstances which resulted in a shortage of gas on TRANSCO's system; the effect of TRANSCO's gas tariff curtailment provisions and service agreements (including its service agreement with NCNG) and the Commission's orders, rules and regulations on TRANSCO's liability for reduced deliveries of gas to its customers; and the effect of an award of damages for curtailment of service on the Commission's ability to allocate the gas supply on TRANSCO's system without undue discrimination or preference. This proceeding is presently pending before the Commission. In filing its motion in this court for an order of reference to the Commission, TRANSCO suggests that it is logical for us to seek and obtain the guidance and determination of the Commission upon the underlying issues before giving consideration to the entire appeal.

■ In *Miss. Power & Light Co. v. United Gas Pipe Line*, 532 F.2d 412 (1976), the Fifth Circuit had occasion to consider the question of a reference to the Commission in a similar controversy, and in an exhaustive and well-reasoned opinion, reviewed the doctrine of primary jurisdiction which "has evolved as a means of reconciling the functions of administrative agencies with the judicial function of the courts." *Id.*, at 417. Based upon its review and analysis of the doctrine, the court concluded:

In this litigation, referral is particularly appropriate. While the Federal Power Commission's jurisdiction is somewhat limited, the Natural Gas Act, as interpreted by the courts, has provided the Commission with the statutory basis for pervasive regulation of the curtailment question. * * * The Commission is presently involved in resolving issues which have a direct impact on civil litigation involving curtailment plans. The advisability of invoking primary jurisdiction is greatest when the issue is already before the agency. * * * The Commission, moreover, is reviewing in some detail the facts and circumstances that resulted in the present shortage in order to determine what is a fair, equitable, permanent curtailment plan. Indeed, this court has already stated in a similar action that referral to the FPC is preferred. (Citations omitted).

*Id.*, at 419, 420. We are in accord with the conclusion reached by the Fifth Circuit that deference to the primary jurisdiction of the Commission is particularly appropriate in the complex area of natural gas curtailment. We recognized the unique expertise of the Commission in *Commonwealth of Va. v. Tenneco, Inc.*, 538 F.2d 1026 (1976), where we observed:

FPC is a far more appropriate body than a district court to make such a determination [requiring a balancing of the conflicting needs and interests of all of the consumers of a natural gas supplier]. As operators of interstate pipelines, defendants serve customers in states other than Virginia outside the geographic jurisdiction of the district court; FPC, on the other hand, has nationwide jurisdiction. Moreover, FPC has more expertise in matters relating to the natural gas industry than does a federal court of general jurisdiction. Because of these factors, FPC should be the adjudicatory body which resolves a curtailment problem in the first instance, subject of course to the statutory right of review of its final decision.

*Id.*, at 1032.

■ Since we conclude that a reference to the Commission is appropriate, it is necessary that we specify the issues for its consideration and determination. Acting on TRANSCO's petition in *Transcontinental Gas Pipe Line Corporation*, Docket No. TC79–8, the Commission has made findings and instituted a proceeding with respect to certain issues tendered by TRANSCO, and has declined jurisdiction of other issues. In its *amicus* brief, the Commission urges that we should not direct referral of any issues upon which the Commission declined to assert jurisdiction in the pending administrative proceeding. We agree with the Com-

mission's position that it does not have the authority to adjudicate ultimate liability in the pending damage action since this responsibility rests solely on the court. We also agree with the Commission that an inquiry into the effect of an award of damages against TRANSCO upon the Commission's ability to carry out its responsibilities under the Act, including its ability to allocate TRANSCO's gas supplies, would at this juncture be premature and speculative. However, we are of the opinion that the Commission has the authority under the Act to investigate the causes of a gas shortage on any particular pipeline system, and that its investigation and determination of the causes of the shortage on TRANSCO's system would be appropriate and helpful in the pending litigation.

The Commission and TRANSCO suggest that the judgment of the district court should be vacated and the case remanded with instructions to refer the specified issues to the Commission for the exercise of its primary jurisdiction, and that proceedings in the district court be stayed pending final Commission action. We are of the opinion, however, that the referral to the Commission should be made by this court and these appeals held in abeyance pending the determination of the Commission on the issues referred to it. After we have had the benefit of the Commission's decision on these issues, we will be in a better position to consider these appeals and determine the proper procedure for reviewing the Commission's findings as well as their effect upon the pending litigation.

Accordingly, IT IS ORDERED that these appeals be held in abeyance until the further order of this court, and that the following facts and issues be referred to the Federal Energy Regulatory Commission for its determination and decision:

(A) The facts and circumstances that resulted in the shortage of natural gas on Transcontinental Gas Pipe Line Corporation's interstate gas pipeline system that allegedly resulted in the loss claimed by CF Industries, Inc., and Farmers Chemical Association, Inc.

(B) The meaning and interpretation of Transcontinental Gas Pipe Line Corporation's gas tariff curtailment provisions and service agreements and of the Commission's orders, rules and regulations relating to the curtailment of deliveries of natural gas in the event of a shortage, and the effect of such provisions on Transcontinental Gas Pipe Line Corporation's responsibilities to its customers, including North Carolina Natural Gas through whom CF Industries, Inc., and Farmers Chemical Association, Inc., claimed.

(C) Whether an undue preference or advantage is created by the award of damages by reason of curtailment of service on Transcontinental Gas Pipe Line Corporation's system, and what administrative action, if any, should be taken if undue preference exists.

(D) The meaning and effect of Transcontinental Gas Pipe Line Corporation's contract with North Carolina Natural Gas and of the related certificate of public convenience and necessity issued to Transcontinental Gas Pipe Line Corporation by the Commission authorizing service to North Carolina Natural Gas and other distributors.

(E) Any other findings which the Commission may deem appropriate or relevant to the underlying controversy and litigation between Transcontinental Gas Pipe Line Corporation and CF Industries, Inc. and Farmers Chemical Association, Inc.

*REFERRAL ORDERED.*