**CF INDUSTRIES, INC. and Farmers Chemical Association, Inc., Plaintiffs,**

**v.**

**TRANSCONTINENTAL GAS PIPE LINE CORPORATION, Defendant.**

**No. C–C–77–131.**

United States District Court, W. D. North Carolina, Charlotte Division.

May 15, 1978.

See also, D.C., 448 F.Supp. 475.

William H. McCullough, Robert H. Spearman, Sanford, Cannon, Adams & McCullough, Raleigh, N. C., Stephen A. Herman, Kirkland, Ellis & Rowe, Washington, D. C., J. S. Crawford, Anthony E. Asscino, Jr., CF Industries, Inc., Long Grove, Ill., E. Osborne Ayscue, Jr., Helms, Mulliss & Johnston, Charlotte, N. C., for plaintiffs.

Lawrence H. Call, Transcontinental Gas Pipe Line Corp., Houston, Tex., W. Pendleton Sandridge, Jr., Womble, Carlyle, Sandridge & Rice, Winston-Salem, N. C., W. T. Covington, Jr., Kennedy, Covington, Lob-

dell & Hickman, Charlotte, N. C., for defendant.

## ORDER DENYING REFERRAL TO THE FEDERAL ENERGY REGULATORY COMMISSION

McMILLAN, District Judge.

On March 15, 1978, the court heard argument on defendant's motion to refer certain issues to the Federal Energy Regulatory Commission (FERC), successor agency to the Federal Power Commission. This order is filed in accord with the oral ruling announced after the hearing.

█ Defendant has made no serious contention that the issues presented in this case are within the *exclusive* jurisdiction of the FERC. Plaintiffs have not challenged the FERC's jurisdiction; they do not claim that any portion of Transco's tariff is unreasonable or should be modified; they do not wish to enjoin implementation of any plan of allocation approved by the FERC. *See, e. g., Federal Power Commission v. Louisiana Power & Light Co.*, 406 U.S. 621, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972); *Commonwealth of Virginia v. Tenneco*, 538 F.2d 1026 (4th Cir. 1976). Accordingly, referral to the FERC of any of the issues raised in this case is appropriate only where that procedure would secure "uniformity and consistency in the regulation of business entrusted [to the FERC]" or where "the issue involves technical questions of fact uniquely within the expertise and experience of [the FERC] . . . ." *Nader v. Alleghany Airlines*, 426 U.S. 290, 303–04, 96 S.Ct. 1978, 1987, 48 L.Ed.2d 643 (1976).

█ The surviving issues in the case are based on common law contract, negligence and fraud claims. See *CFI v. Transcontinental Gas Pipe Line Co.*, 448 F.Supp. 475 (D.C., order filed February 27, 1978). Transco contends that the FERC should be asked to address four issues: (1) the causes of the natural gas shortage on the Transco system in the early 1970's; (2) whether provisions in Transco's tariff can immunize the pipeline from liability for damages or whether Transco can escape liability based on defenses of impossibility or commercial impracticability of performance; (3) the proper interpretation of certain provisions in the Transco-NCNG contract; and (4) whether the prospect of damages liability would significantly affect the FERC's ability to allocate gas under a curtailment plan. The court is not persuaded that any of these issues should be referred.

The first issue—the causes of the Transco shortage—presents no "uniformity" problem and few problems of special expertise. It may be true that the FERC has a staff more experienced and knowledgeable in the history of the natural gas industry than any of the participants in this litigation, but this does not warrant a lengthy delay in court proceedings while the FERC is asked to prepare a study of the Transco shortage which would, in effect, duplicate the discovery that has already taken place. Any information developed by the FERC would ultimately have to be presented to a jury; it would not be determinative of any issue in the case. There is no reason to believe an FERC study would be of any more assistance to a jury than would the careful organization and presentation of evidence by attorneys educated through the discovery process.

The second issue for referral actually embraces a number of separate defenses which Transco has asserted in its answer. While all the defenses require some consideration of the special regulatory scheme established by the Natural Gas Act, they are also all variants of well-known contract and negligence defenses which are within the conventional competence of courts and juries. Transco argues that the availability of these defenses in a curtailment damages suit should first be considered by the FERC, but any advantage to be derived from deferring to the agency is considerably attenuated by the fact that there is already a substantial body of law, including expressions of opinion by the FPC or the FERC, on the availability and scope of the defenses raised by Transco. In particular, the extent to which a curtailment plan ordered by the agency can immunize a pipeline from dam-

ages liability has been considered in several similar cases. *See, e. g., State of Louisiana v. Federal Power Commission*, 503 F.2d 844 (5th Cir. 1974); *International Paper Co. v. Federal Power Commission*, 476 F.2d 121 (5th Cir. 1973); *Monsanto Co. v. Federal Power Commission*, 149 U.S.App.D.C. 396, 463 F.2d 799 (1972); *Tennessee Gas Pipeline Co.*, FPC Docket Number RP74–24 (March 14, 1977). Precedents developed in the course of analogous cases and agency proceedings can supply the court with sufficient guidance and render unnecessary another time-consuming referral to the agency.

There is even less reason to refer to the FERC issues of contract interpretation not involving Transco's tariff but relating solely to the NCNG–Transco service agreement. *The Commission has in the past refused to address straightforward contract interpretation questions and has instead stayed its own proceedings pending the outcome of related court proceedings. Merle Rowan v. Allied Chemical Corp.*, 39 F.P.C. 64 (1968); *Inexco Oil Company*, FPC Docket No. C177–45 (January 13, 1977).

Transco's fourth issue for referral—the impact of a curtailment damages suit on the FERC's ability to allocate gas supplies—would seem to implicate regulatory policies of general applicability. However, the FERC has expressly refused to address this identical issue in the context of a case referred to it from the United States District Court for the Northern District of Florida. *City of Tallahassee v. Florida Gas Transmission Company*, FPC Docket No. RP77–43 (July 26, 1977). The Commission stated:

> "[W]e are dubious of the practicability of embarking upon a lengthy and costly proceeding to ascertain the effects of potential damages of an indeterminate amount upon Florida Gas' operations or, indeed, as to whether such a course of action would be in the public interest.
>
> \*     \*     \*     \*     \*     \*
>
> "Since the amount of damages that could be awarded is unknown, it would seem apparent that any record determination of the effects of damages upon Florida Gas' continuing ability to serve existing customers would be very difficult and time consuming. Moreover, even after protracted formal hearings any dollar limits reached on damages within which this pipeline could still remain viable would be speculative and would be applicable only to a limited time frame. In these circumstances, we are of the view that holding extensive formal hearings to attempt to answer definitively the Tallahassee court's additional question of the effect of indeterminate potential damages upon the Florida Gas system would not be practicable or serve the public interest. Without much more knowledge concerning the amounts of potential damages and other relevant factors, we could not venture to predict how or whether such damages would impede our ability to require an equitable allocation of any given pipeline's limited gas supply."

There is no reason to believe that the FERC's response would be any different as to the specific impact of this suit on the Transco system or that the Commission would be any more likely to address the general issue in the context of this suit when it would not do so in the *Florida Gas* case.

The probable fate of this case if referred to the FERC is well illustrated by the history of proceedings following the decision of the Fifth Circuit in *Mississippi Power & Light v. United Gas Pipeline Co.*, 532 F.2d 412 (1976), *cert. denied* 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977), a case heavily relied on by Transco. On April 22, 1977, the district court issued its referral order in accord with the decision of the Fifth Circuit. The issues referred were similar to those suggested for referral in this case. On January 19, 1977, another district court had entered a similar referral order in a separate curtailment damages action also involving United Gas Pipeline Company. *Allied Paper, Inc. v. United Gas Pipeline Co.*, CA No. 75–421–H (S.D.Ala.). *To date the Commission has not acted upon either of those cases.*

Indeed, the Commission staff has *opposed* the referrals and sought to confine the scope of agency proceedings in United's case to the particular questions raised by a special exculpatory provision in United's tariff. The staff's brief notes:

> "It need not be recalled that the Commission was not created as a forum for civil litigation, but rather was structured as an administrative agency whose function must relate to its role as the primary enforcer of the Natural Gas Act. As such, *it is incumbent upon the Commission to render binding decisions upon matters prospectively affecting the natural gas industry. Certainly the advisory and retrospective nature of the findings requested by the court in the instant case distinguishes that request from the concerns addressed in the normal course of the Commission's regulatory functions.* Moreover, the extensive nature of the inquiry requested by the court requires that the inquiry be regarded as secondary to the conduct of the Commission's regulatory proceedings. . . . *[T]he Commission's involvement with civil litigation resulting from United's curtailment, or that of any other jurisdictional pipeline, will inevitably detract from the performance of its other functions.*"

*United Gas Pipeline*, FPC Docket No. RP71–29 (Staff Opposition to Motion to Lodge Referral Order) (emphasis is supplied). The response of the staff was to request the initiation of a rule-making proceeding to resolve *prospectively* the questions raised in curtailment damages suits.

The only result of the referral in *Mississippi Power & Light* has been to delay the district court in the decision of the litigation before it and to occupy the Commission with questions of liability arising out of *past* shortages. In short, both court and Commission have been detained from their principal duties. This case will be ready for trial shortly after September 1, 1978. In view of the delay which would be occasioned by a referral and in view of the improbability of obtaining definitive answers to any of the referred issues, the court sees no reason to engage in what would be a futile exercise.

IT IS THEREFORE ORDERED that defendant's motion to refer certain issues to the Federal Energy Regulatory Commission and to stay further proceedings in this court is denied.